John N. RITCH, Jr., Petitioner,

v.

**DIRECTOR OF VEHICLES AND TRAFFIC
OF DISTRICT OF COLUMBIA,**
Respondent.

No. 1801.

Municipal Court of Appeals for the
District of Columbia.

Argued May 21, 1956.

Decided July 6, 1956.

Joseph Levin, Washington, D. C., for petitioner.

Richard W. Barton, Asst. Corporation Counsel, with whom Vernon E. West, Corporation Counsel, Chester H. Gray, Principal Asst. Corporation Counsel, Milton D. Korman and Hubert B. Pair, Asst. Corporation Counsel, were on the brief, for respondent.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

Under the "Point System"[1] petitioner accumulated seventeen points for various moving traffic violations, and after a hearing in the office of the Director of Vehicles and Traffic petitioner's motor vehicle opera-

tor's permit was revoked for an indefinite period. On review by the Director the order was sustained and petitioner now seeks judicial review under Code 1951, Supp. III, § 11–772.

Petitioner contends the hearing accorded him did not satisfy the requirements of due process because (1) the hearing officer did not advise him of his right to assistance of counsel, (2) he was denied the right to confront and cross-examine adverse witnesses, and (3) the hearing officer failed to make findings of fact and conclusions of law.

■ Due process, in reference to administrative proceedings, demands that the case be "fairly heard."[2] The requirements of a fair hearing are dependent upon the nature and purpose of the hearing itself. The procedure followed need not conform strictly to the formalities of a court action and many administrative proceedings are purposely conducted in an informal manner. Informality, unless lacking in "the rudimentary requirements of fair play,"[3] or violative of statutory regulation, does not violate due process.

This concept of informality permeates administrative action under the point system. The primary purpose of revocation is not punishment of the individual but protection of the community. It is the result of a determination that the operator is endangering the lives and property of his fellow citizens. A motorist is given ample opportunity to correct his bad driving habits. He is given a warning by mail when he has been assessed three points. When he has accumulated five points, he is requested to appear at the Department of Vehicles and Traffic for a conference. At the conference a review is had of the motor-

---

1. See Chappelle v. Board of Commissioners, D.C.Mun.App., 110 A.2d 697; Lambert v. Board of Commissioners of District of Columbia, D.C.Mun.App., 116 A. 2d 926.

2. National Labor Relations Board v. In-

diana & Michigan Elec. Co., 318 U.S. 9, 28, 63 S.Ct. 394, 87 L.Ed. 579.

3. Morgan v. United States, 304 U.S. 1, 15, 58 S.Ct. 773, 775, 82 L.Ed. 1129.

ist's driving record and an attempt is made to make him more conscious of his obligations and to solicit his cooperation in observing traffic rules and regulations. The motorist is warned that should his point total reach eight, his permission to operate a motor vehicle in the District may be suspended, and that should he accumulate twelve or more points, his permit is subject to revocation. The hearing granted after receipt of notice of proposed suspension or revocation is no less informal than the "five point conference." Prior to his appearance at the hearing, the motorist is advised that the hearing officer will expect him to furnish reasons why, in view of his traffic record, his operator's permit should not be suspended or revoked. The hearing officer is not obliged to sustain the suspension or revocation, but if the hearing develops no mitigating circumstances such action is usually taken and the motorist is ordered to turn in his permit within three days.[4]

■ It is apparent that a hearing of this type does not require the testimony of adverse witnesses. The motorist is presented with his own traffic record reflecting the specific violations of which he has been found guilty or on which he has forfeited collateral. The purpose of the hearing is not to retry these violations; it is merely to afford the motorist an opportunity to show why, notwithstanding the violations, he should be permitted to retain his permit. In the instant case petitioner in his application for a hearing and for review clearly and cogently stated why he thought his permit should not be revoked, namely, that his occupation was that of a truck driver and without his permit he would be deprived of his means of livelihood, and he orally stated the same reasons at the hearing. We cannot rule that he was prejudiced by the failure to be advised that he was entitled to assistance of counsel.

■ With respect to the failure to be confronted by witnesses, the accusatory witness was petitioner's own traffic record. We have previously ruled that under the point system a motorist is bound by his court record of convictions and forfeitures.[5]

■ As to lack of findings of fact and conclusions of law, it is apparent that the only findings of fact necessary were that sufficient points had accumulated to warrant revocation of the permit, that the evidence offered in mitigation was not deemed sufficient to justify an exception, and that petitioner was not a fit person to operate a motor vehicle in the District of Columbia. All these findings are implicit in the order of revocation. No conclusions of law were necessary.

■ Petitioner next claims that the Board of Commissioners had no authority to enact the point system. He argues that although Code 1951, § 40–302(a) gives the Commissioners unrestricted power to "revoke or suspend an operator's permit for any cause which they or their agent may deem sufficient", this power has been expressly limited by La Forest v. Board of Commissioners, 67 App.D.C. 396, 398, 92 F. 2d 547, 549, certiorari denied 302 U.S. 760, 58 S.Ct. 367, 82 L.Ed. 588. In La Forest the court stated that the blanket delegation of authority to the Commissioners "permits a revocation or suspension only in cases where there is shown to be a breach of the usual and reasonable regulations made concerning the control of traffic." Apparently petitioner's position is that the point system is not a reasonable regulation concerning the control of traffic. He argues that the system is mandatory, unflexible and arbitrary. But this argument may be disposed of by reviewing petitioner's own previous case. On September 21, 1954, petitioner was served notice that unless he ap-

---

4. See "The Traffic Point System as used in the District of Columbia," by George E. Keneipp, Director of Vehicles and Traffic for the District of Columbia. Traffic Quarterly, April 1954.

5. Chappelle v. Board of Commissioners, D.C.Mun.App., 110 A.2d 697.

plied for a hearing his permit would be revoked because of an accumulation of twelve points. An application for hearing was made and the case was reviewed by the Director who reduced the revocation order to a thirty-day suspension and a restricted permit for five months. This in itself negates the contention that the system is mandatory and arbitrary.

As we view the point system, it is a method by which a tabulation is kept of each motorist's traffic violations. Points are assessed in accordance with the seriousness of the offense, and the Commissioners have indicated that should a motorist accumulate twelve or more points he is in their opinion unfit to operate a vehicle in the District of Columbia. We think the system is reasonable and in no way violates Congressional intent as petitioner alleges.

■ Finally, petitioner contends that he was denied the statutory right of having his case reviewed by the Commissioners. Code 1951, § 40–302(a), provides in part that an order of revocation "shall take effect five days after its issuance unless the holder of the permit shall have filed within such period, written application with the Commissioners of the District of Columbia for a review of their order or the order of their agent, and, if upon such review, the Commissioners shall sustain such order, the same shall become effective immediately." The complaint of petitioner is not that no administrative review was provided, but that the Director of Vehicles and Traffic reviewed the case rather than the Commissioners themselves.

Section 3(a), Reorganization Plan No. 5 of 1952,[6] provides that "the Board of Commissioners is hereby authorized to make from time to time such provisions as it deems appropriate to authorize the performance of any of its functions, including any function transferred to or otherwise vested in the Board of Commissioners by this reorganization plan, by any member of the Board of Commissioners, or by any other officer, employee, or agency of the Government of the District of Columbia, except the courts thereof." The transmittal letter of the President stated:[7]

> "This plan constitutes an important first step in strengthening the organization of the government of the District of Columbia. By transferring to the Board of Commissioners the functions of most of the existing agencies, abolishing those agencies, and *granting the Board broad authority to delegate its functions* * * *." (Italics supplied.)

On May 2, 1955, the Commissioners delegated all authority pertaining to the suspension and revocation of motor vehicle operators' permits to the Director of Vehicles and Traffic, including the review of such cases.[8] This is what the reorganization plan, mentioned above, expressly contemplated, and petitioner cannot claim that any abridgement of his rights, statutory or otherwise, has been effected.

Affirmed.

6. Code 1951, Supp. III, Title 1, Administration, Appendix, p. 14.

7. Code 1951, Supp. III, Title 1, Administration, Appendix, p. 14.

8. District of Columbia Register, Vol. 1, p. 310.