No. 23459.

WILLIAM A. JONES *v.* CIVIL SERVICE COMMISSION OF COLORADO, CY J. BURRESS, JR., WILLIAM R. WELSH, JR., R. Y. BATTERTON, COMMISSIONERS.

(489 P.2d 320)

Decided September 27, 1971.    Rehearing denied October 26, 1971.

BERGE, MARTIN & CLARK, WARREN MARTIN, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, PAUL D. RUBNER, Assistant, ROBERT L. HOECKER, Assistant, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE HODGES.

JONES was discharged from his position of correctional sergeant by the Warden of the Colorado State Penitentiary. After hearing, the Civil Service Commission upheld the dismissal. On review, pursuant to C.R.S. 1963, 3-16-5, the trial court affirmed the dismissal. Jones by writ of error now seeks reversal of the trial court's judgment. We do not agree that any of the contentions for reversal made by Jones are meritorious.

The penitentiary furnished Jones with a Bill of Particulars in which he was charged with wilfully violating the written and published rules of the penitentiary which prohibited any employee from selling to, buying from, or delivering to any inmate any article or commodity, or otherwise trafficking with the inmates without authorization. He was further charged with gross misconduct unbecoming a state officer or employee under Article X, § 2(t) of the Colorado State Civil Service Commission Rules and Regulations. The Bill specified

that these charges were based on the fact that Jones connived and conspired with an inmate of the prison to smuggle contraband drugs into the institution and did, in fact, smuggle them into the institution in violation of prison rules and regulations.

Stated briefly, the facts which gave rise to these charges are as follows. The warden of the prison had reason to suspect that drugs were being smuggled into the prison by one or more employees. The warden devised a plan whereby an inmate would approach various employees and attempt to have one of them bring a package into the institution for him. A compound of dextro-amphetamine sulfate was obtained and placed along with two marked $100 bills in a locker at the Pueblo Bus Depot. The key to this locker was given to the inmate and it ultimately came into Jones' possession. Jones was observed picking the package up and returning to Canon City a short time thereafter. Jones transferred the compound from its original container into a plastic bag. This plastic bag with the powder in it was ultimately given to the warden by the inmate. Jones gave one of the $100 bills to his wife and deposited the other in his personal bank account at a Canon City bank.

The record is clear that Jones admitted his actions insofar as picking up the package and taking it back to Canon City when confronted by the warden and other members of the prison staff. Jones also admitted keeping the two bills he found in the package. Although Jones told two different stories on two different occasions, it is clear that, at the very least, he placed the compound in such a location that the inmate had access to it and did retrieve it. Jones refused to sign a statement detailing these facts when asked to do so by the warden. The warden discharged Jones. After conducting a full hearing on the matter and considering written briefs submitted by counsel, the Commission entered its findings and conclusions, which sustained the dismissal.

The Commission found that there had been adequate evidence to prove that Jones had picked up the package and retained the money, while giving the powder to the inmate. The Commission further found that while Jones contended throughout the hearing that he thought there was an organized plan to "get him," he did not at any time notify his supervisors of the plan or of the inmate's having requested him to bring a package into the institution for him. The Commission found Jones guilty of a gross violation of the rules and regulations of the prison, as well as of his responsibilities as a prison guard.

Jones first contends that he was denied due process of law in that the procedures followed by the Commission in allowing certain items into evidence did not conform to the procedures required in a criminal proceeding. Jones argues that since he was charged with a criminal act, he should have the benefit of those safeguards applicable to a criminal proceeding.

Jones also argues that he was entrapped into bringing the compound into the prison by the deceitful and misleading representations of the inmate that someone was out to get him.

He contends that he was not warned of his constitutional rights and not afforded the opportunity to consult with counsel during the interrogation, and because of this, it was error for the Commission to admit his unsigned statement into evidence.

The only case which Jones cites as being analogous in support of his contention that his constitutional rights were violated is *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562. That case dealt with the situation where statements were extracted from police officers at an administrative hearing under compulsion of a New Jersey statute which provided for the forfeiture of their jobs if they refused to testify. The statements were later used against the officers in criminal proceedings growing out of the administrative inquiry.

The United States Supreme Court held that these statements could not be used against the officers because they were made involuntarily as a result of the coercive effect of the New Jersey statute.

■ The *Garrity* case is not in point in the situation before us in that we are not here involved with a criminal proceeding. No criminal prosecution was ever instituted against Jones. The only use ever made of the statement was at an administrative hearing. The Commission accepted the statement into evidence with the proviso that it would decide what weight was to be given to it. Counsel for Jones had adequate opportunity to inquire into matters concerning both the content of the statement and the manner in which it was taken, as well as to the manner in which it was recorded and transcribed. Jones had the opportunity, and did explain to the Commission why he refused to sign the statement and to tell them what portions of the statement he objected to. In this review, this court is limited to a determination of whether the Commission abused its discretion in admitting the statement. *Hawkins v. Hunt,* 113 Colo. 468, 160 P.2d 357.

■ We cannot say that the Commission abused its discretion in admitting the statement and giving to it the weight it deemed proper. This was not a criminal prosecution; it was an administrative hearing and the rules of evidence and procedure are not as strict in an administrative hearing as they are in a criminal case. *See* 67 C.J.S. *Officers* § 66.

■ The foregoing statement applies with equal weight to the admission of the statement as to the alleged defense of entrapment. Entrapment is a criminal defense. In this proceeding, Jones was charged with violating a departmental rule, not a criminal offense. Therefore, the defense of entrapment has no application to this proceeding.

The crucial points in all of this are that Jones at no

time reported anything to his superior officers and he kept the two $100 bills. Jones made no explanation of his failure to report, and he admitted keeping the two hundred dollars. By taking the simple precaution of reporting the inmate's approach and proposition to the proper superior officers, Jones could have protected himself, if that was his real intent.

■ Jones also contends that the Bill of Particulars did not specify the charge with which the Commission ultimately found him guilty. We find no merit to this contention. As an employee of the prison, Jones had been issued a copy of a publication entitled "Rules and Regulations for the Government of Officers and Employees." Jones was chargeable with the responsibility of full knowledge of the contents of that book. The book contained detailed rules which Jones should have known and obeyed. It was with the violation of these rules that Jones was found guilty. The Bill of Particulars recited that Jones had conspired with an inmate to bring contraband drugs into the prison, which activity is prohibited by the rules.

We conclude that the ultimate findings of the Commission bear a relationship to the charges and the evidence received by the Commission was proper in order to prove the charges against Jones. Also, the record clearly reveals that by his own admissions and testimony before the Commission, Jones admitted violating the rules.

■ The evidence amply supports the Commission's ruling which sustains the removal of Jones from his employment at the penitentiary.

Judgment affirmed.

Mr. Justice Day, Mr. Justice Kelley and Mr. Justice Lee concur.