No. 24128.

DAVID FRANK CAMPBELL *v.* STATE OF COLORADO, DEPARTMENT OF REVENUE, DIVISION OF MOTOR VEHICLES, JOHN H. HECKERS, WILLIAM CASSELL, AND JOHN GEE.

(491 P.2d 1385)

Decided October 26, 1971. Opinion modified and as modified rehearing denied November 15, 1971.

204

CARROLL & BRADLEY, P.C., JOHN S. CARROLL, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, HAROLD L. NEUFELD, Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

HEARING Commissioner, John Gee of the Colorado Department of Revenue, Division of Motor Vehicles, after a hearing, ruled that Campbell's driver's license be revoked. The ground for revocation was that Campbell

had been convicted on three different occasions of driving while intoxicated. He sought review and reversal of the revocation in the trial court. From the judgment of the trial court which upheld the revocation, Campbell by writ of error sets forth a variety of grounds upon which he urges reversal of the judgment of the trial court. Campbell, in our view, does not present a valid basis for reversal. We therefore affirm the trial court's judgment. Those arguments not discussed herein are considered to be totally without merit.

## I.

It is contended that since revocation is a judicial function, the hearing commissioner must be a person learned in the law. Campbell's authority for this proposition is the Magna Charta, which provides that all of the King's judicial officers shall be men learned in the law.

While C.R.S. 1963, 135-1-1 does adopt certain portions of the common law of England and states that it shall be the law of this state, it does so with the proviso "until repealed by legislative authority." In *People ex. rel Thomas v. Goddard*, 8 Colo. 432, 7 P. 301, this court held that the common law of England was only valid until such time as replaced and superseded by legislative enactment. The legislature has enacted statutes setting forth the requirements for presiding officers at administrative hearings. C.R.S. 1963, 3-16-4. Therefore, the Magna Charta provision in this regard has no effect in this state.

The appointment of the hearing officer in this case complies with the statute and with the provisions of Colo. Const. art XII, § 13. This gives rise to the presumption that the hearing officer was both qualified and authorized to perform the duties of a hearing commissioner.

## II.

Campbell next argues that the failure of the hearing officer to take an oath of office was fatal to the

effective performance of his duties. Campbell also asserts that the fact Gee was appointed on the basis of an oral examination invalidates his appointment. This court held in *Getty v. Witter,* 107 Colo. 302, 111 P.2d 636, that the mode of examination is discretionary with the Civil Service Commission.

Gee was originally appointed by former Revenue Director Theobald. Although the successor to Theobald never formally reappointed Gee, the evidence is uncontraverted that Gee took a Civil Service examination and was certified by the Civil Service Commission as a hearing officer in 1964. At some point subsequent to 1964, the title of Gee's position was changed by the Director from hearing officer to hearing commissioner.

██ We do not think that the change in nomenclature from "officer" to "commissioner" changes the essence of the position and thereby destroys the validity of Gee's qualification or appointment.

██ The more perplexing question is whether a hearing commissioner is a civil officer within the meaning of Colo. Const. art XII, § 8. That section requires "Every civil officer, except ... such inferior officers as may be by law exempted" to take an oath or affirmation to support the constitutions of the United States and of the State of Colorado, and to faithfully perform the duties of the office.

The distinction between officers and employees was dealt with by this court in *Hudson v. Annear,* 101 Colo. 551, 75 P.2d 587. That case involved two members of the general assembly who were appointed as division chief field deputies of the income tax department by the state treasurer. In considering whether chief field deputies were officers within the meaning of Colo. Const. art V, § 8, the court stated:

"... their service is in subordination of the state treasurer, who, in the exercise of the general sovereignty inherent in the executive office which he holds, ... shares his authority with none. In short, [the men] are em-

ployees of the state treasurer, and have not been ...
clothed with power incidental to a civil office."

We think that this statement is applicable to the case
before us. The power was in the Director of Revenue
and Gee's duty was the routine application of a manda-
tory statute, C.R.S. 1963, 13-4-22, and he was at all times
subject to the supervision and control of the Director of
Revenue. Gee possessed no independent power of his
own, and, therefore, his position was that of an employee
and not that of a civil officer. There was no requirement
that Gee take an oath of office before entering upon his
duties, and his failure to take an oath does not render
the functions performed by him invalid or ineffective.

### III.

Campbell states that the holding of this court in
*People v. Nothaus,* 147 Colo. 210, 363 P.2d 180 makes the
right to drive upon the highways of this state a necessary
corollary of the illimitable right to acquire, possess and
use property. He misconstrues the meaning of that case
as is shown by our recent decisions in *Love v. Bell,* 171
Colo. 27, 465 P.2d 118 and *People v. Brown,* 174 Colo 513,
485 P.2d 500, where we held "there is no constitutionally
guaranteed illimitable right to drive upon highways."
The import of these cases is that the right to drive a
vehicle on the highways may be regulated by the lawful
exercise of the police power in the interest of the public
health, safety and welfare.

Nor is a driver's license revocation hearing
criminal in nature. It is an administrative hearing con-
ducted to determine if, notwithstanding the violation,
the licensee should be allowed the use of the public
highways, *Ritch v. Director of Vehicles and Traffic,* 124
A.2d 301 (Mun. Ct. App. Dist. Col.). As an adminis-
trative hearing, it is not governed by the strict rules of
evidence and procedure which obtain in a criminal action.
*Jones v. Civil Service Commission,* 176 Colo. 25, 489
P.2d 320.

## IV.

 The records of the Division of Motor Vehicles are not inadmissible hearsay as claimed by Campbell. C.R.S. 1963, 13-4-21 imposes a duty upon the courts of the state to forward records of convictions for traffic offenses to the Division of Motor Vehicles. These records are certified by the court employee preparing them. The violator is identified by name and driver's license number. At the revocation hearing, the licensee is presented with a copy of his driving record and given an opportunity to object to its validity. In addition to the safeguards built into the administrative procedure, the licensee's right to appeal the decision of the Division of Motor Vehicles to the district court provides the judicial safeguard that revocation of a driver's license will be reasonably and fairly administered. We hold that the records of the Division of Motor Vehicles prepared in accordance with the statutory requirements are to be presumed correct. This holding is in accord with the current trend of authority. *Ritch v. Director of Vehicles and Traffic, supra; Lambert v. Board of Commissioners,* 116 A.2d 926 (Mun. Ct. App. Dist. Co.); *Strasser v. Ress,* 165 Neb. 858, 87 N.W.2d 619; *Stewart v. Ress,* 164 Neb. 876, 83 N.W.2d 901, 5 A.L.R.3d 690, 704.

## V.

 Neither does the doctrine of separation of powers "preclude an administrative adjudication of facts sufficient to apply legislative rules for the revocation of licenses." *Haswell v. Powell,* 38 Ill.2d 161, 230 N.E.2d 178. By force of C.R.S. 1963, 13-4-22, the revocation in this case was mandatory. It has been held that the function of the hearing examiner in such a situation is purely ministerial. *Stewart v. Ress, supra; Chmelka v. Smith,* 81 S.D. 40, 130 N.W.2d 423.

## VI.

 Campbell's contention that he was denied the right to trial by jury and the right to confront wit-

nesses against him is adequately answered by our recent decision in *People v. Brown, supra,* where we held that the right to jury trial and the right to confront witnesses are inapplicable in an implied consent hearing. We feel they are also inapplicable in an administrative hearing to determine whether a driver's license should be revoked for accumulated traffic violations. *See* also *Glenn v. Commissioners of the District of Columbia,* 146 A.2d. 575 (Mun. Ct. App. Dist. Col.); *Ritch v. Director of Vehicles and Traffic, supra.*

## VII.

We find no merit in Campbell's claim that the notice he received from the Division of Motor Vehicles was defective because it did not give him adequate notice of the facts warranting revocation. Counsel for Campbell asserts that both he and Campbell thought that the hearing involved C.R.S. 1963, 13-4-23, which allows the Department to impose a temporary suspension on the basis of accumulated points. Counsel claims that he manifested surprise upon learning that the hearing was to involve C.R.S. 1963, 13-4-22(j), which provides for mandatory revocation of a driver's license when the licensee has been convicted three times of driving while under the influence of intoxicating liquor.

A careful scrutiny of the record fails to disclose any manifestation of surprise. If counsel was surprised, the proper procedure would have been to have that surprise noted for the record, and then request a stay of the proceedings in order to prepare for the hearing.

Rather, counsel made argument to the Commissioner based on the defense of *res judicata.* By doing this, he impliedly, if not explicitly, admitted that he was proceeding on the assumption that the statute involved was the one dealing with the mandatory revocation for three convictions of driving while intoxicated. This fails to support his assertion that he did not have adequate notice of the statutes or charges involved.

## VIII.

We likewise find no merit to the contention that a previous trial constituted double jeopardy and was *res judicata* as to revocation proceedings.

The proceedings to revoke a driver's license on the basis of previous convictions for violations are not intended as a further punishment of the violator, but are designed soley for the protection of the public in the use of highways and does not in the legal sense, subject the licensee to double jeopardy or punishment. *Ritch v. Director of Vehicles and Traffic, supra; Glenn v. Commissioners of the District of Columbia, supra,* 96 A.L.R.2d 612.

## IX.

It is contended that the imposition of an indefinite revocation is cruel and unusual punishment. We do not agree. Indefinite revocation here is a remedial action designed to assure the general public safety in the use of its highways. When one has consistently demonstrated a total disregard for his responsibilities as a driver and for the safety of other drivers and pedestrians, he cannot complain when he loses his conditional right to use the highways of the state. *People v. Nothaus, supra; Ritch v. Director of Vehicles and Traffic, supra; Glenn v. Commissioners of the District of Columbia, supra.*

## X.

Campbell's contention that the defendant made no findings of fact is sufficiently answered by the court in *Ritch, supra:*

"As to lack of findings of fact and conclusions of law, it is apparent that the only findings of fact necessary were that sufficient points had accumulated to warrant revocation of the permit, that the evidence offered in mitigation was not deemed sufficient to justify an exception and that petitioner was not a fit person to operate a motor vehicle . . . All of these findings were implicit in the order of revocation."

The judgment is affirmed.