Henry John DEUTSCHENDORF, a/k/a John Denver, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent,

and

The State of Colorado ex rel. Gale A. Norton, Intervenor.

Ronald W. LEEVER, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent,

and

The State of Colorado ex rel. Gale A. Norton, Intervenor.

Nos. 95SC531, 95SC520.

Supreme Court of Colorado, En Banc.

July 1, 1996.

Rehearing Denied July 29, 1996.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Kelly P. Marinelli, Boulder, for Petitioner in No. 95SC520.

Alexander M. Hunter, District Attorney, Twentieth Judicial District, William F. Nagel, D.D. Mallard, Deputy District Attorneys, Boulder, for Respondent in No. 95SC520.

Gerash, Robinson & Miranda, P.C., Walter L. Gerash, Todd J. Thompson, Denver, for Petitioner in No. 95SC531.

Milton K. Blakey, District Attorney, Ninth Judicial District, H. Lawson Wills, Deputy District Attorney, Aspen, for Respondent in No. 95SC531.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Paul Farley, Deputy Attorney General, Larry A. Williams, First Assistant Attorney General, Lauren A. Edelstein, Assistant Attorney General, State Services Section, Denver, for Intervenor.

Colorado District Attorneys Council, Raymond T. Slaughter, Executive Director, Denver, for Amicus Curiae Colorado District Attorneys Council.

Chief Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the decision of the Pitkin County District Court in *Deutschendorf v. People*, No. 95CR23 (Colo. Dist.Ct. July 19, 1995), and the decision of the Boulder County District Court in *People v. Leever*, No. 95CR116 (Colo.Dist.Ct. July 11, 1995). Both district courts held that the initiation of separate criminal proceedings after the resolution of an administrative license revocation hearing did not violate the protections provided by the double jeopardy clauses of the United States and Colorado constitutions. We affirm both decisions.

## I.

### Deutschendorf

On August 21, 1994, Henry John Deutschendorf (Deutschendorf) was involved in an automobile accident in Pitkin County, Colorado. After the accident, Deutschendorf submitted to a chemical test to determine his blood alcohol level. The test results indicated that Deutschendorf's blood alcohol level was .128 percent, in excess of the legal limit of .10 percent. Consequently, the Pitkin County District Attorney's office charged Deutschendorf with driving under the influence (DUI) pursuant to section 42–4–1202(1)(a), 17 C.R.S. (1993), driving with excessive alcohol content (DUI per se) pursuant to section 42–4–1202(1.5), 17 C.R.S. (1993), and careless driving pursuant to section 42–4–1204(2) (1993).

Additionally, the state trooper who administered the test to Deutschendorf filed an affidavit and notice of revocation with the Colorado Department of Revenue. Consequently, pursuant to section 42–2–122.1, 17 C.R.S. (1993), the Department of Revenue notified Deutschendorf that it was suspending his license. Deutschendorf then requested a hearing before the Department of Revenue, which was held on November 29, 1994. After the hearing, the hearing officer held that the Department of Revenue would not suspend Deutschendorf's license because the hearing officer was unable to conclude from the evidence presented that the trooper administered the blood test to Deutschendorf within two hours since Deutschendorf last operated his vehicle as required by section 42–2–122.1.

Deutschendorf subsequently filed a motion to dismiss the criminal charges against him in the Pitkin County Court, alleging that subjecting him to a criminal prosecution for DUI and DUI per se, in light of the previous administrative revocation hearing, constituted a violation of the double jeopardy clauses of the United States and Colorado constitutions (the "Double Jeopardy Clause").[1] On March 7, 1995, the county court granted

---

1. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides:
    No person shall be ... subject for the same offense to be twice put in jeopardy of life or limb.
    U.S. Const. amend. V. The Double Jeopardy Clause of the Colorado Constitution provides:
    No person shall ... be twice put in jeopardy for the same offense.

Colo. Const. art. II, § 18.
    We have held that the Double Jeopardy Clause of the Colorado Constitution provides at least as much protection as its federal counterpart. *People v. Allen*, 868 P.2d 379, 381 (Colo.), *cert. denied*, —— U.S. ——, 115 S.Ct. 129, 130 L.Ed.2d 73 (1994). For the purposes of the instant case we refer to both clauses simultaneously as the Double Jeopardy Clause.

Deutschendorf's motion and dismissed the criminal charges against him.

The respondent, the People of the State of Colorado, appealed the judgment of the county court to the Pitkin County District Court. On July 19, 1995, the district court reversed the county court's order of dismissal and remanded the case to the county court for further proceedings. Deutschendorf then petitioned this court for certiorari. We granted certiorari and consolidated *Deutschendorf* with *People v. Leever*, No. 95SC520.

### Leever

On May 19, 1994, Officer James Byfield of the Boulder Police Department stopped petitioner Ronald Leever (Leever) in his vehicle for failure to signal prior to making a turn. During the course of the stop, Officer Byfield conducted a field sobriety test on Leever, and determined that Leever was under the influence of alcohol. Officer Byfield consequently arrested Leever. Leever then submitted to a blood alcohol test, the results of which indicated that Leever's blood alcohol content was .18 percent. The Boulder County District Attorney's office charged Leever with DUI, DUI per se, and failure to use a turn signal pursuant to section 42–4–803, 17 C.R.S. (1993).

Additionally, the state trooper who administered the blood alcohol test to Leever filed an affidavit and notice of revocation with the Colorado Department of Revenue. Consequently, pursuant to section 42–2–122.1, 17 C.R.S. (1993), the Department of Revenue notified Leever that it was suspending his license. Leever then requested a hearing before the Department of Revenue, which was held on July 8, 1994. After the hearing, the Department of Revenue rescinded the order of revocation, holding that Officer Byfield had no reasonable suspicion to effect the initial stop of Leever's vehicle.

On November 10, 1994, Leever proceeded to trial before the court on the criminal charges against him. The court found Leever guilty of DUI, DUI per se, and failure to signal. Leever appealed this conviction to the Boulder County District Court, alleging that by subjecting him to a criminal prosecution after subjecting him to an administrative revocation hearing, the State violated the Double Jeopardy Clause. On July 11, 1995, the district court affirmed Leever's convictions.

Leever subsequently petitioned this court for certiorari. We granted certiorari and consolidated *Leever* with *People v. Deutschendorf*, No. 95SC531.

### II.

The United States and Colorado constitutions prohibit the State from placing a person in jeopardy twice for the same offense. U.S. Const. amend. V; Colo. Const. art. II, § 18. The Double Jeopardy Clause protects individuals against three separate abuses: (1) a separate prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same crime. *United States v. Halper,* 490 U.S. 435, 441, 109 S.Ct. 1892, 1897–98, 104 L.Ed.2d 487 (1989); *Boulies v. People,* 770 P.2d 1274, 1277–78 (Colo.1989). In the instant case, the petitioners both allege that the State has violated the third of these protections, claiming that the State exposed them to multiple punishments for the same crime by subjecting them first to an administrative license revocation proceeding, and then to a criminal prosecution with the potential for imposition of both criminal sanctions and license revocation. Additionally, Leever maintains that the State violated the first protection by initiating a criminal prosecution for the same offense that the Department of Revenue "acquitted" Leever of in the administrative license revocation hearing. We reject both of these contentions.

### A.

The government may subject an individual to both criminal and civil sanctions with respect to the same acts or omissions. *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938); *see also United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 361, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1984). The Double Jeopardy Clause prohibits the government from

*criminally* punishing, or attempting to punish, an individual twice for the same offense. *Id.* This court has previously held that license revocation proceedings are administrative civil proceedings, and are not criminal in nature. *Colorado Dep't of Revenue v. Kirke,* 743 P.2d 16, 20 (Colo.1987) ("License revocation proceedings are civil in nature; the protections afforded criminal defendants do not apply."); *People v. McKnight,* 200 Colo. 486, 493, 617 P.2d 1178, 1183 (1980) ("The administrative proceeding to revoke a driver's license because of habitual traffic offender status is a civil one.").

■ Because each of the cases before us involves a criminal prosecution following a civil proceeding, they do not constitute separate *criminal* prosecutions after acquittals for the same offenses. The petitioners were not "prosecuted" by the Department of Revenue, nor did the administrative resolution of their civil cases in their favor constitute "acquittals." The State thus does not violate the Double Jeopardy Clause by subjecting individuals to criminal prosecution pursuant to the DUI and/or DUI per se statutes subsequent to subjecting them to an administrative license revocation proceeding.

## B.

■ Both petitioners contend that they have been subjected to multiple punishments for the same conduct in violation of the Double Jeopardy Clause. In determining whether this element of the Double Jeopardy Clause is implicated, the fact that the administrative proceeding is classified as civil, rather than criminal, is of no moment. *Halper,* 490 U.S. at 447–48, 109 S.Ct. at 1901–02. In order to establish that the State has imposed multiple punishments in violation of the Double Jeopardy Clause, an individual must demonstrate that: (1) the State has subjected the individual to separate proceedings; (2) the conduct precipitating the separate proceedings consisted of one offense; and (3) the penalties in each of the proceedings may be considered "punishment" for the purposes of the Double Jeopardy Clause. *People v. Ol-*

*son,* 921 P.2d 51, 53 (Colo.App.1996); *State ex rel. Schwartz v. Kennedy,* 120 N.M. 619, 904 P.2d 1044, 1051 (1995). The third prong of this test—whether the revocation of an individual's driver's license in an administrative revocation hearing pursuant to section 42–2–122.1 is "punishment"—is dispositive in the instant case.[2]

The United States Supreme Court has not previously decided whether the administrative revocation of an individual's driver's license, followed by a criminal prosecution based on the same conduct, violates the Double Jeopardy Clause. *People v. Marmon,* 903 P.2d 651, 655 (Colo.1995). Several recent cases decided by the United States Supreme Court, however, are instructive to our analysis of this issue.

In *Halper,* 490 U.S. 435, 109 S.Ct. 1892, the United States Supreme Court faced the question "whether and under what circumstances a civil penalty may constitute punishment for the purpose of the Double Jeopardy Clause." In *Halper,* the defendant was a manager of a medical services provider who made sixty-five false claims for reimbursement for services rendered. The Government indicted the defendant on sixty-five counts of violating the federal criminal false claims statute, 18 U.S.C. § 287 (1988). The defendant was convicted on all sixty-five counts and sentenced to two years imprisonment and fined $5,000. *Halper,* 490 U.S. at 437, 109 S.Ct. at 1895–96. The Government then brought an action against the defendant under the False Claims Act, 31 U.S.C. §§ 3729–31, a civil statute. Under this Act, the Government sought fines of $2,000 per count plus double actual damages, for a total statutory penalty of over $130,000. *Id.* at 438, 109 S.Ct. at 1896.

The Supreme Court held that the imposition of this civil penalty, following the defendant's criminal sanctions, violated the Double Jeopardy Clause, stating:

We therefore hold that under the Double Jeopardy Clause a defendant who already

---

2. Because we find that an administrative driver's license revocation executed pursuant to § 42–2–122.1 is remedial, rather than punitive, we need

not address the other two components of the multiple punishment test.

has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial but only as a deterrent or retribution.

*Id.* at 448–49, 109 S.Ct. at 1902; *accord Marmon,* 903 P.2d at 654–55. The Court in *Halper* further elaborated that,

[w]here a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment.

*Halper,* 490 U.S. at 449–50, 109 S.Ct. at 1902–03. The Court then held that the penalty in the case before it was sufficiently disproportionate to the amount of actual damages sustained by the government that the sanction constituted a second penalty in violation of the Double Jeopardy Clause. *Id.* at 452, 109 S.Ct. at 1903–04.

Under the standard set forth in *Halper,* therefore, the inquiry before us is whether the administrative revocation of the petitioners' driver's licenses pursuant to section 42–2–122.1 was a punitive or remedial action. The petitioners argue that our analysis should be guided by the following statement of the Court in *Halper:*

[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.

*Halper,* 490 U.S. at 448, 109 S.Ct. at 1902. The petitioners seize on the language "also serving either retributive or deterrent purposes," and assert that this statement supports the proposition that if a civil sanction serves any retributive or deterrent purpose, then it is punishment for purposes of double jeopardy analysis. We reject this proposition.

■ We initially note that the language cited by the petitioners is not the holding in *Halper,* but rather dicta. The specific holding in *Halper* states:

We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial but only as a deterrent or retribution.

*Halper,* 490 U.S. at 448–49, 109 S.Ct. at 1902. The actual holding thus clarifies that a sanction will be considered punishment if it cannot be characterized as remedial at all, but only as a deterrent or retribution. The holding clarifies that so long as a civil sanction serves a primarily remedial purpose, and does not *only* promote deterrence or retribution, it is not punishment and does not implicate the Double Jeopardy Clause. *Bae v. Shalala,* 44 F.3d 489, 493 (7th Cir.1995); *State v. Hickam,* 235 Conn. 614, 668 A.2d 1321, 1325–26 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1851, 134 L.Ed.2d 951 (1996).

This interpretation of the holding in *Halper* is reinforced by the decision of the United States Supreme Court in *Department of Revenue v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). In *Kurth Ranch,* Montana law enforcement officers raided the defendant's farm, confiscated marijuana plants and drug paraphernalia they found on the premises, and arrested the defendants. The defendants pled guilty to the state criminal charges arising from the raid and the court sentenced them at a criminal proceeding.

Subsequent to the resolution of the criminal cases, the Montana Department of Revenue attempted to collect nearly $900,000 from the defendants pursuant to Montana's Dangerous Drug Tax Act (the "Tax Act"). Mont. Code Ann. §§ 15–25–101 to –123 (1987). The defendants challenged the imposition of the tax on Double Jeopardy grounds. The Supreme Court held that the imposition of the tax on the defendants, subsequent to the punishment imposed pursuant to the defendants' criminal conviction, violated the Double Jeopardy Clause's prohibition against

multiple punishments. In so holding, the Court noted that the "obvious deterrent purpose" of the tax did not automatically render it a punishment. *Id.* at —— ——, 114 S.Ct. at 1946–47. The Court nevertheless went on to hold that because of several other "unusual features,"[3] the tax was a second punishment and was thus prohibited by the Double Jeopardy Clause.

By expressly stating that a deterrent purpose is not dispositive of whether a particular sanction constitutes punishment, the *Kurth Ranch* Court embraced the explicit holding of *Halper* that if a civil sanction serves a primarily remedial purpose, and does not exclusively promote deterrence or retribution, it is not punishment and does not implicate the Double Jeopardy Clause. Thus, we interpret the holding of *Halper* to state that nonpunitive sanctions may legitimately have a deterrent element. In determining whether a civil penalty such as the one before us is remedial or punitive, a court must look to the primary purposes served by the sanction.

Our utilization of the *Halper* test to resolve the instant cases is supported by the recent decision of the United States Supreme Court in *United States v. Ursery*, —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). In *Ursery*, the Court was directly faced with deciding whether two in rem civil forfeitures constituted punishment for double jeopardy purposes. *Ursery* involved two consolidated cases in which the United States criminally prosecuted defendants for violations of various federal drug laws. In addition to the criminal prosecutions, the United States instituted civil forfeiture proceedings against both defendants pursuant to 21 U.S.C. § 841(a)(1). *Ursery*, at —— ——, 116 S.Ct. at 2138–39.

The Court held that the rules it articulated in *Halper* and *Kurth Ranch* were inapposite to the facts of *Ursery* because those cases dealt with civil penalties and tax proceedings, respectively, rather than the in rem civil forfeiture at issue in the instant case. *Id.* at —— —— ——, 116 S.Ct. at 2146–47. The Court thus clarified that the test to determine whether certain governmental actions violate the Double Jeopardy Clause varies depending on the nature of the action taken. The Court then stated the test to determine whether a civil forfeiture is punishment for double jeopardy purposes. First, a court must look to whether the legislature intended the forfeiture proceedings to be civil or criminal. Second, the court must consider "whether the proceedings are so punitive in fact as to 'persuade [the court] that the forfeiture proceeding[s] may not legitimately be viewed as civil in nature,' despite Congress' intent." *Id.* at ——, 116 S.Ct. at 2147 (quoting *89 Firearms*, 465 U.S. at 366, 104 S.Ct. at 1107). Applying this test, the Court held that the civil forfeitures before it were not punishment and that the Government thus did not violate the Double Jeopardy Clause in either case. *Id.* at ——, 116 S.Ct. at 2149.

We are now faced with the task of determining the proper test to apply to determine whether the actions taken by the State in the instant cases violated the Double Jeopardy Clause. The test announced in *Ursery* is clearly limited to the civil forfeiture context, while the *Kurth Ranch* analysis is limited to determination of whether a tax constitutes punishment for double jeopardy purposes. The rule articulated in *Halper*, however, dealt with the more general category of civil penalties.

In *Ursery*, the Court distinguished *Halper* because the civil penalty involved there was an in personam proceeding while the civil forfeiture proceeding involved in *Ursery* was

---

3. The Supreme Court held that the Tax Act is punitive because imposition of the tax is conditioned on the commission of a crime, it is exacted only after the taxpayer is arrested for the precise conduct giving rise to the tax obligation in the first place, and it is levied on goods that the taxpayer neither owns nor possesses when the tax is imposed. *Department of Revenue v. Kurth Ranch*, 511 U.S. 767, —— —— ——, 114 S.Ct. 1937, 1947–48, 128 L.Ed.2d 767 (1994). In this regard, the Court stated:

> Taken as a whole, this drug tax is a concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis.

*Id.* at ——, 114 S.Ct. at 1948. The factors enumerated by the Court are specific to the determination of whether a tax constitutes punishment and are irrelevant to the inquiry before us today.

in rem. In drawing this distinction, the *Ursery* Court noted:

> While a 'civil action to recover ... penalties, is punitive in character,' and much like a criminal prosecution in that 'it is the wrongdoer in person who is proceeded against ... and punished,' in an in rem forfeiture proceeding, 'it is the property which is proceeded against, and by resort to a legal fiction, held guilty and condemned.'

*Ursery*, —— U.S. at ——–——, 116 S.Ct. at 2144–45 (citing *Various Items of Personal Property v. United States,* 282 U.S. 577, 580–81, 51 S.Ct. 282, 283–84, 75 L.Ed. 558 (1931)). Because an administrative license revocation is in the nature of an in personam civil penalty rather than an in rem civil forfeiture, we determine that the test articulated in *Halper* is well suited for application to the cases before us today.

### 1.

We begin our analysis with an examination of the plain language of section 42–2–122.1. The legislative declaration of the purposes of the statute provides, in pertinent part:

> (1) The purposes of this section are:
>
> (a) To provide safety for all persons using the highways of this state by quickly revoking the driver's license of any person who has shown himself to be a safety hazard by driving with an excessive amount of alcohol in his body and any person who has refused to submit to an analysis. . . .
>
> . . . .
>
> (c) Following the revocation period, to prevent the relicensing of any person until ... he no longer constitutes a safety hazard to other highway users.

§ 42–2–122.1(1). This declaration indicates that the intent of the legislature in imposing the sanction of driver's license revocation was to serve the remedial purpose of fostering the safety of all persons using the highways of the state. Moreover, in interpreting this statute, we have restated its remedial purpose frequently. *E.g., Nefzger v. Colorado Department of Revenue,* 739 P.2d 224, 228 (Colo.1987); *Brewer v. Motor Vehicle Div.,* 720 P.2d 564, 567 (Colo.1986); *Campbell v.*

*Department of Revenue,* 176 Colo. 202, 211, 491 P.2d 1385, 1390 (1971); *see also Olson,* No. 94CA1716, slip op. at 6, —— P.2d at ——; *Stanger v. Colorado Dep't of Revenue,* 780 P.2d 64, 65 (Colo.App.1989), *cert. denied* No. 89SC665 (Colo. Apr. 9, 1990). The legislature and judiciary of this state have thus unequivocally declared that the primary purpose of the sanction of driver's license revocation is remedial rather than punitive.

The petitioners urge us to delve into the legislative history of section 42–2–122.1 and intuit from the statements of various legislators that section 42–2–122.1 means something other than it states on its face. We decline this invitation. Our well-established rules of statutory construction dictate that when the language of a statute is clear and unambiguous, the statute must be interpreted as written. *People v. Zapotocky,* 869 P.2d 1234, 1238 (Colo.1994). As the purposes of section 42–2–122.1 are manifest in its plain language, any inquiry into the history of the statute is unnecessary.

### 2.

Additionally, the right to drive a vehicle is not constitutionally guaranteed. *Campbell,* 176 Colo. at 208, 491 P.2d 1385, 1388. The operation of motor vehicles on the public highways of the state is, and always has been, a governmentally regulated activity. *Olson,* No. 94CA1716, slip op. at 6, —— P.2d at ——. The aspects of motor vehicle travel over which the government exerts control are myriad. Thus, it is clear that the governmentally granted right to drive a vehicle on the public highways of this state may be regulated by the lawful exercise of the police power for the benefit of public safety and welfare. *Campbell,* 176 Colo. at 208, 491 P.2d 1385, 1388. A sanction which constitutes the revocation of a privilege voluntarily granted is "characteristically free of the punitive criminal element." *Helvering,* 303 U.S. at 399, 58 S.Ct. at 633. The fact that an administrative driver's license revocation proceeding simply revokes a license that was voluntarily granted to the individual by the State further bolsters our conclusion that such is a remedial, rather than a punitive sanction.

### 3.

Moreover, we have held many times, in similar contexts, that license revocation proceedings serve remedial, rather than punitive purposes. *See, e.g., Marmon,* 903 P.2d at 655 (holding that disbarment of a lawyer is not punishment for double jeopardy purposes); *People v. Martin,* 897 P.2d 802, 804 (Colo.1995) ("[W]here the respondent has already been punished by the criminal justice system, our aim in determining the level of discipline is not retribution, but the protection of the public."); *see also Loui v. Board of Medical Examiners,* 78 Hawai'i 21, 889 P.2d 705, 711 (1995) ("It is clear that the statute in question is not designed to 'punish' ... rather, it is designed to protect the public from unfit physicians.").

We stated in *Marmon* that a contrary conclusion would "lead to the absurd result that lawyers convicted of criminal offenses could never be disciplined." *Marmon,* 903 P.2d at 655. We believe that a contrary result in the instant case would lead to an equally ludicrous result: the agency responsible for issuing driver's licenses and ensuring the public safety in that regard would be deprived of jurisdiction to revoke the license of one who has flagrantly abused his driving privilege.

We do not doubt that from the subjective viewpoint of one whose license has been revoked, such a sanction seems like punishment. However, we do not determine whether a sanction carries a punitive element from the perspective of the individual subject to the sanction. *Halper,* 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7 ("[F]or the defendant even remedial sanctions carry the sting of punishment."). As stated above, remedial sanctions may legitimately include a deterrent component. *Halper,* 490 U.S. at 448–49, 109 S.Ct. at 1901–02; *Kurth Ranch,* 511 U.S. at ———–———, 114 S.Ct. at 1946–47; *Olson,* 921 P.2d at 54. Thus, the fact that an administrative driver's license revocation executed pursuant to section 42–2–122.1 may "carry the sting of punishment" to the individual upon whom it is imposed does not render the sanction punitive for double jeopardy purposes.

### III.

 Guided by the standards stated above, we hold that an administrative driver's license revocation imposed pursuant to section 42–2–122.1 does not constitute punishment for double jeopardy purposes. We thus hold that the imposition of criminal sanctions, subsequent to an administrative driver's license revocation proceeding, does not constitute the imposition of multiple punishments and does not violate the Double Jeopardy Clause.[4] We therefore affirm the order of the Pitkin County District Court in *Deutschendorf v. People,* No. 95CR23, and the order of the Boulder County District Court in *People v. Leever,* No. 95CR116.

---

4. This holding is in accord with the vast majority of courts which have ruled on this issue. *E.g., State v. Zerkel,* 900 P.2d 744, 758 (Alaska.Ct.App.1995); *State v. Hickam,* 235 Conn. 614, 668 A.2d 1321, 1329 (1995); *State v. Higa,* 79 Hawai'i 1, 897 P.2d 928, 936 (1995); *State v. Talavera,* 127 Idaho 700, 905 P.2d 633, 639 (1995); *State v. Kocher,* 542 N.W.2d 556, 558 (Iowa 1996); *State v. Mertz,* 258 Kan. 745, 907 P.2d 847, 857 (1995); *State v. Savard,* 659 A.2d 1265, 1268 (Me.1995); *Luk v. Commonwealth,* 421 Mass. 415, 658 N.E.2d 664, 672 (1995); *State v. Hanson,* 543 N.W.2d 84, 89–90 (Minn. 1996); *State v. Hansen,* 249 Neb. 177, 542 N.W.2d 424, 435, *cert. denied,* — U.S. —, 116 S.Ct. 2509, 135 L.Ed.2d 198 (1996); *State v. Cassady,* 140 N.H. 46, 662 A.2d 955, 959 (1995); *State ex rel. Schwartz v. Kennedy,* 120 N.M. 619, 904 P.2d 1044, 1060 (1995); *State v. Zimmerman,* 539 N.W.2d 49, 56 (N.D.1995); *State v. Becker,* 669 A.2d 548, 549 (Vt.1995); *Baldwin v. Department of Motor Vehicles,* 35 Cal.App.4th 1630; 42 Cal.Rptr.2d 422, 430 (1995); *Davidson v. MacKinnon,* 656 So.2d 223, 225 (Fla.Dist.Ct. App.), *review denied,* 662 So.2d 931 (Fla.1995); *Nolen v. State,* 218 Ga.App. 819, 463 S.E.2d 504, 507 (1995), *cert. denied,* — U.S. —, 116 S.Ct. 2550, 135 L.Ed.2d 1070 (1996); *People v. Dvorak,* 276 Ill.App.3d 544, 213 Ill.Dec. 120, 128, 658 N.E.2d 869, 877 (1995); *Tench v. Commonwealth,* 21 Va.App. 200, 462 S.E.2d 922, 925 (1995).