**COLORADO DEPARTMENT OF REVENUE, Petitioner,**

v.

**Jake A. GARNER, Respondent.**

No. 02SC235.

Supreme Court of Colorado, En Banc.

March 24, 2003.

Ken Salazar, Attorney General, Robert H. Dodd, Jr., Assistant Attorney General, Revenue Unit, Business and Licensing Section, Denver, Colorado, Attorneys for Petitioner.

Larry A. Garner, Golden, Colorado, Attorney for Respondent.

Justice HOBBS delivered the Opinion of the Court.

The court of appeals construed section 42–2–138(3), 11 C.R.S. (2002),[1] to prohibit the Colorado Department of Revenue (Department) from revoking the license of a driver who drove while his license was under restraint. The court of appeals required, as a condition for extension or renewal of revocation, that the driver be actually convicted of another driving offense or violation. *See Colo. Dep't of Revenue v. Garner*, 53 P.3d 763, 764 (Colo.App.2002). The Department contends that (1) commission of an "offense" is required, not a "conviction," (2) the offense may be the act of driving while one's license is under restraint, and (3) the Department's receipt of an accident report may trigger the revocation renewal or extension action. The statute provides:

> The department, upon receiving a record of conviction or *accident report* of any person *for an offense* committed while operating a motor vehicle, *shall immediately* examine its files to determine if the license or operating privilege of such person has been suspended or revoked. If it appears that said *offense was committed while the license or operating privilege of such person was revoked or suspended*, except as permitted by section 42–2–132.5, *the department shall not issue* a new license *or grant any driving privileges for an additional period of one year* after the date such person would otherwise have been entitled to apply for a new license or for reinstatement of a suspended license and shall notify the district attorney in the county where such violation occurred and request prosecution of such person under subsection (1) of this section.

1. The General Assembly has not amended section 42–2–138(3) in any manner relevant to this case since Garner's license was revoked in 2000; therefore, we cite to section 42–2–138(3), 11 C.R.S. (2002).

§ 42–2–138(3), 11 C.R.S. (2002) (emphasis added).

We agree with the Department and reverse the judgment of the court of appeals.[2]

## I.

Jake Garner (Garner) was convicted of driving while alcohol impaired.[3] That incident occurred in June of 2000. His breath alcohol content was 0.152 grams of alcohol per 210 liters of breath. The arresting officer seized Garner's driver's license. The Department sent a notice of driver's license revocation to Garner at the address last registered in the Department's records. The notice informed Garner that his driver's license was being revoked because of an alcohol offense, pursuant to section 42–2–126(2)(a)(I), 11 C.R.S. (2000).

Garner failed to appear at the scheduled revocation hearing, and the Department revoked his license for three months—from July 22 until October 23, 2000. On August 19, 2000, Garner was driving his car when another car rear-ended his car. Although Garner was not responsible for causing the accident, the investigating officer ticketed him for driving under restraint.[4]

At the end of the initial revocation period, the Department issued Garner a new driver's license. However, after receiving the accident report, the Department revoked Garner's driver's license for an additional year, pursuant to section 42–2–138(3), 11 C.R.S.

(2002). Garner requested a hearing on the revocation before a hearing officer.

The hearing officer found that Garner committed the offense of driving under restraint, as defined in section 42–2–138(1)(d)(I), 11 C.R.S. (2000). Although Garner had not actually received the Department's revocation notice on the first offense, because he had moved, the hearing officer found that Garner had knowledge of circumstances sufficient to cause a reasonable person to be aware that his or her license was under restraint. The record has proof of these circumstances: 1) Garner's breath alcohol level was over 0.10 grams of alcohol per 210 liters of breath, mandatory grounds for license revocation;[5] 2) after the arresting officer seized his driver's license, Garner applied for an identification card, rather than a replacement driver's license, indicating that he knew that his driver's license would be or had been suspended; 3) Garner had constructive notice of the restraint because the Department mailed the notice to his last address of record and Garner did not report his new address.

Garner appealed the additional one-year license revocation to the district court, in part, on the grounds that the district attorney had dismissed the driving under restraint charge and a conviction is necessary under section 42–2–138(3), 11 C.R.S. (2002), for an additional revocation. The district court issued an order reversing Garner's license revocation.[6] The court of appeals af-

2.  We accepted certiorari on two questions:
    (1) Whether a driver whose license has been revoked, who has notice of the revocation, who continues to drive and is involved in an accident, who is identified as the driver of a motor vehicle in the accident report and is charged with driving under restraint, avoids the revocation extension imposed by section 42–2–138(3) C.R.S., when the district attorney drops criminal charges associated with the accident?
    (2) Whether the Court of Appeals erred as a matter of law by holding that an "accident report alone" does not support the extension of revocation, where the statute, § 42–2–138(3), C.R.S., directs "(t)he department, upon receiving a record of conviction *or accident report* of any person for an offense committed while operating a motor vehicle ... to *immediately* ... determine if the license or operating privilege of such person has been suspended or revoked," and if so, to extend the restraint and

notify the district attorney of the violation? (Emphasis added by petitioner Department of Revenue).

3.  *See* § 42–4–1301(1), 11 C.R.S. (2000).

4.  *See* § 42–2–138(1)(a), 11 C.R.S. (2000).

5.  The department shall revoke the license of any person upon its determination that the person: (I) Drove a vehicle in this state when the amount of alcohol, as shown by analysis of the person's ... breath ... [was] 0.10 or more grams per two hundred ten liters of breath at the time of driving or within two hours after driving.
    § 42–2–126(2)(a)(I), 11 C.R.S. (2000).

6.  From the transcript of the trial court's oral proceedings, it appears that the trial judge believed that the "offense" upon which the addi-

firmed, holding that the driver must be convicted of a driving offense committed while the driver's license was revoked before the Department can extend driver's license revocation under section 42–2–138(3), 11 C.R.S. (2002). *Garner*, 53 P.3d at 764.

## II.

We hold that the Department, upon receiving an accident report for a person who is driving under revocation, can impose an additional period of revocation under section 42–2–138(3), 11 C.R.S. (2002), after finding that the person was driving under restraint at the time of the accident.

## A.

### Standard of Review

■ The court of appeals determined that the hearing officer exceeded his statutory authority because "[s]ection 42–2–138(3) does not authorize the Department to make an independent determination of whether a driver has committed the requisite driving offense for the additional restraint action," but, rather, authorizes the Department to extend revocation only when the driver has been convicted of an offense. *Garner*, 53 P.3d at 764. Because this is a question of law, we conduct de novo review. *Telluride Resort and Spa, L.P. v. Colo. Dep't of Revenue*, 40 P.3d 1260, 1264 (Colo.2002).

■ When construing statutory provisions, we seek to effectuate the intent of the General Assembly. *Leonard v. McMorris*, 63 P.3d 323, 326 (Colo.2003). We examine the statutory language, giving words and phrases their commonly accepted and understood meaning. *Adams v. Farmers Ins. Group*, 983 P.2d 797, 801 (Colo.1999). We give effect to every word in a statute and harmonize potentially conflicting provisions, if possible. *Telluride*, 40 P.3d at 1265. We avoid interpretations that lead to absurd results. *Town of Erie v. Eason*, 18 P.3d 1271, 1276 (Colo.2001). We are not required to accept the enforcement agency's interpretation of a statute, but we give it careful con-

sideration. *See Douglas County Bd. of Equalization v. Clarke*, 921 P.2d 717, 721 (Colo.1996).

## B.

### Plain Meaning of the Statute

■ The statute we construe provides the Department with authority to determine whether a person was driving under driver's license restraint when he or she was involved in an automobile accident and, if so, to extend the license suspension or revocation.

Section 42–2–138(3), 11 C.R.S. (2002), states that the Department shall examine its files "upon receiving a record of conviction *or* accident report." "Or" is a word "used to connect words, phrases or clauses representing alternatives." Random House Webster's Unabridged Dictionary 1360 (2d ed.1998). The Department is required to take "immediate" action in either of two circumstances involving a driver who operates a motor vehicle while under license restraint: (1) it receives a record of conviction or (2) it receives an accident report involving the person. We presume the General Assembly means what it clearly says. *State v. Nieto*, 993 P.2d 493, 500 (Colo.2000).

The word "offense" in the statute does not equate to "conviction." The statute provides that the Department must extend the revocation if it appears that an "offense" or "violation" was committed during the license restraint period. "Conviction" has a specific meaning in the Uniform Motor Vehicle Law as "conviction in any court of record or any municipal court or acceptance of a penalty assessment notice and payment of the prescribed penalty in accordance with the provisions of section 42–4–1701." § 42–1–102(19), 11 C.R.S. (2002). Offense and violation are not specifically defined in the code. Elsewhere in the Uniform Motor Vehicle Law the General Assembly uses the phrase "convicted of any offense," in juxtaposition to the phrase "offense committed" in section 42–2–138(3), 11 C.R.S. (2002), which we construe here.

tional revocation must be based cannot include driving under restraint. We disagree. The trial judge also found that the statute was unconstitu-

tional as applied because the hearing officer decided to revoke Garner's license before hearing all of the evidence. This issue is not before us.

*See, e.g.,* §§ 42–2–104(3)(f), –125(2)(i), 11 C.R.S. (2002).

The court of appeals relied on several cases discussing the type of conviction required for revocation extension. However, the extensions in those cases were based on records of conviction, and the cases did not address a situation where the extension is based on an accident report. *See Harris v. Colo. Dep't of Revenue,* 714 P.2d 1325 (Colo. App.1985); *Lathe v. State,* 691 P.2d 356 (Colo.App.1984); *Conway v. Colo. Dep't of Revenue,* 653 P.2d 411 (Colo.App.1982).

We construe statutes to give effect to all terms, when possible. Here, the words "or accident report" would have no effect if the Department were required to wait until a conviction had been entered before taking action. Also, the Department could not act "immediately" upon receiving the accident report, as the statute directs, if the Department were required to wait for a conviction.

## C.

### Remedial Nature of the Department's Action

■ Our interpretation of the plain language of this statute is consistent with the General Assembly's purpose. "[T]he intent of the legislature in imposing the sanction of driver's license revocation was to serve the remedial purpose of fostering the safety of all persons using the highways of the state." *Deutschendorf v. People,* 920 P.2d 53, 60 (Colo.1996). License suspension or revocation for driving under restraint is related to the public welfare purpose of the criminal offense of driving under restraint. *See In re People v. Ellison,* 14 P.3d 1034, 1037 (Colo. 2000).

■ Driving a motor vehicle is a privilege, not a right. *Deutschendorf,* 920 P.2d at 60. Since driving is an inherently dangerous activity, especially by someone who has been convicted of violating motor vehicle laws in the past, the General Assembly entrusted the Department with broad authority to extend suspension or revocation when it becomes aware that an individual is driving under restraint, either through a record of conviction or an accident report. "Because regulations governing the licensing of drivers, including regulations for restraining a driver's license, are essential to public safety, driving under restraint impairs the effectiveness and legitimacy of the driving regulation scheme." *Ellison,* 14 P.3d at 1038. The Department has consistently interpreted the statute as authorizing additional suspension or revocation in these circumstances, and the Department is correct in doing so.

■ Garner drove while his license was under restraint, and the Department learned of this occurrence through an accident report involving a vehicle he was driving. Although he did not have actual knowledge of the Department's restraint notice, Garner had knowledge of circumstances sufficient that a reasonable person would know of the restraint: the arresting officer seized his driver's license for the alcohol offense; his breath alcohol level was over 0.10 grams of alcohol per 210 liters of breath, a grounds for mandatory license revocation; he applied for an identification card, rather than a replacement driver's license, indicating that he knew that his driver's license would be or had been suspended; and he had constructive notice of the restraint because the Department mailed the notice to his last address of record and Garner had not reported his new address to the Department. Such circumstances are sufficient to satisfy the knowledge requirement we identified in *Ellison,* 14 P.3d at 1036–37.

The hearing officer's order of an additional one-year revocation was justified under the law and the facts of this case. After receiving an accident report, the Department is required to extend or renew revocation for one year upon a finding that a driver listed in the report committed a driving offense while his or her driver's license was suspended or revoked. § 42–2–138(3), 11 C.R.S. (2002). Upon holding the requested administrative hearing, the hearing officer found that Garner committed the offense of driving under restraint.

## III.

Accordingly, we reverse the court of appeals. We remand the case to the court of

appeals for further proceedings regarding any other issues remaining in the case.

Justice RICE does not participate.