In re Chase.

[In re Chase (1976), 50 Ohio App. 2d 393.]

(No. 629—Decided September 23, 1976.)

*Mr. Robert A. Wilcox*, for appellant Harlan W. Chase.
*Mr. William J. Brown*, attorney general, and *Mr. Joseph Scuro*, for the director of highway safety of Ohio.

STEPHENSON, J. This is an appeal from a judgment of the Ross County Court of Common Pleas affirming an order of the Board of Personnel Review which, in turn, had sustained an order of the director of the Department of Highway Safety removing Harlan W. Chase, appellant herein, as a state highway patrol officer.

The following errors are assigned:

"1. The statutory and regulatory basis for appellant's dismissal violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

"(A) O. R. C. 143.25 [*sic*] (now 124.34) and the regulations of the Ohio State Highway Patrol allegedly violated by appellant are unconstitutionally vague;

"(B) R. C. 143.25 [*sic*] (now 124.34) and the regulations of the Ohio State Highway Patrol allegedly violated by appellant are unconstitutionally over broad and infringe upon appellant's right to privacy.

"2. The dismissal of appellant from the Ohio State Highway Patrol was arbitrary and discriminatory in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

"3. The Board of Review committed prejudicial error in admitting the alleged confession of appellant into evidence for the following reasons:

"(A) Failure of the state to introduce extrinsic evidence which in any way was probative of the material element of the accusations against appellant.

"(B) Failure of the investigating officers to advise appellant of his constitutional rights as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution;

"(C) Failure of the board of review to exclude the coerced statements of appellant as violative of his Fifth, Sixth and Fourteenth Amendment rights."

The appeal to the court below was determined upon the record including the evidence presented before the Board of Personnel Review. Appellant did not appear or testify in his own behalf at the board hearing.

The parties are aware of the facts appearing in the record and we deem it unnecessary to detail them here for disposition of this appeal. In summary, a going away stag party was given on the night of July 10, 1973, for a transferred patrol officer, which was attended by a number of state highway patrol officers, including appellant. The party was held in a private section of a local motel restaurant. After the party, at which intoxicating liquors were consumed, several of the officers, including appellant, entered the public bar at the motel and continued to drink and several of the officers danced with unescorted women

patronizing the bar. After the bar closed, appellant and several other officers, together with three women, one of whom was a motel waitress, went to the apartment of one of the women. By the time appellant arrived at the apartment, accompanied by one of the women, there was evidence he was intoxicated. Certain familiarities, but stopping short of sexual relations, appear to have been engaged in by appellant with one of the women in the bedroom of the apartment. Subsequently, an investigation was made by state patrol officers which resulted in disciplinary action against appellant and five other officers with penalties imposed ranging from reprimand and suspension to transfer, with appellant, however, being the only officer removed from his employment. We proceed on the assumption herein, no claim being made to the contrary, that appellant is a state classified civil service employee. See *State, ex rel. Meyers,* v. *Chaiamonte* (1976), 46 Ohio St. 2d 230, 233, leaving open the civil service status of patrol officers.

The regulation of civil service employees in Ohio stems from the 1912 amendment to Section 10, Article XV of the Ohio Constitution, which mandates the passage of laws by the General Assembly to implement the objectives set forth in the section. A number of statutes were thereafter enacted including the predecessors of what is now R. C. 124.34, formerly R. C. 143.27, which provided, in part, the following:

"The tenure of every officer or employee in the classified service of the state * * * holding a position under sections 143.01 to 143.48, inclusive, of the Revised Code, shall be during good behavior and efficient service and no such officer or employee shall be reduced in pay or position, suspended, or removed, except for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the director of state personnel or the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance in office."

Pursuant to R. C. 5503.03, the superintendent of the

State Highway Patrol has adopted disciplinary rules for highway patrolmen which are, in the part relevant here, the following, as to conduct while off duty:

"[A]ssociations with women while off duty shall be of the quality acceptable by good social standards that assure the member of exemplifying stability, fidelity and morality." (Section 3(b), Article II.)

Section 8(B) provides, in part: "the conduct and deportment of a member while off duty shall be moderate and gentlemanly at all times, and particularly so when he is identifiable to the public as a member of the State Highway Patrol."

The order of removal issued by the appointing authority stated the reasons for removal as follows:

"The reason for this action is that you have been guilty of Failure of Good Behavior in the following particulars, to wit: (1) In violation of Article II Section 3(B) of the Rules and Regulations of the Ohio State Highway Patrol, you are hereby charged that on July 11, 1973 between the hours of 12 midnight and 5:00 A. M., while attending a party at the L-K Lounge at the east edge of Chillicothe; then at the apartment of one Nancy Rinehart, while off duty, you did associate with women not of the quality acceptable by good social standards that assured the member of exemplifying stability, fidelity and morality. (2) In violation of Article II, Section 8(B) of the Rules and Regulations of the Ohio State Highway Patrol, your conduct and deportment while off duty was not moderate and gentlemanly, and particularly so when identifiable to the public as a member of the State Highway Patrol.

(3) On July 11, 1973, you were under the influence of alcoholic beverages.

(4) On July 11, 1973, you did engage in an immoral sex act."

The first assignment of error asserts that despite specificity in the order of removal both the statutory grounds of removal and the patrol regulations are unconstitutional by reason of vagueness and overbreadth. The issue of vagueness is a claimed violation of procedural due process,

while the claim of overbreadth asserts a substantive due process violation of appellant's right of privacy. We do not perceive the constitutional infirmities appellant asserts in either the statute or the regulations. We view *Arnett* v. *Kennedy* (1974), 416 U. S. 134, as negating both appellant's vagueness and overbreadth claims. In *Arnett*, it was asserted that Section 7501(a), Title 5, U. S. Code, a section in The Lloyd-LaFollette Act which authorizes removal of federal employees for "such cause as will promote the efficiency of the service," was constitutionally vague and overbroad. In rejecting that contention, the court quoted from *CSC* v. *Letter Carriers* (1973), 414 U. S. 548, 578-579, as follows:

" 'There are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest. "The general class of offense to which (the provisions are) directed is plainly within (their) terms (and they) will not be struck down as vague, even though marginal cases could be put where doubts might arise." *United States* v. *Harriss,* 347 U. S. 612, 618 (1954).' " (*Arnett, supra* at 159.)

In rejecting the overbreadth claim, the court interpreted that statute to exclude only constitutionally protected speech, expressly recognizing that the government has an interest, as an employer, in the efficiency of the public services it performs and, thus, may constitutionally regulate, even in the area of speech, its employees in that respect and, in that aspect, such speech is not constitutionally protected. See *Pickering* v. *Board of Education* (1968), 391 U. S. 563. Finally, in *Arnett* the court noted the essential fairness of the removal standard, even though general and broad, and the impracticability of greater specificity and quoted the opinion of Judge Leventhal in *Meeham* v. *Macy*, (1968), 129 U. S. App. D. C, 217, 230, 392 F. 2d 822, 835, wherein it was stated:

"* * * [I]t is not feasible or necessary for the Government to spell out in detail all that conduct which will result in retaliation. The most conscientious of codes that define prohibited conduct of employees include 'catchall' clauses prohibiting employee 'misconduct,' 'immorality,' or 'conduct unbecoming.' We think it is inherent in the employment relationship as a matter of common sense if not [of] common law that [a government] employee * * * cannot reasonably assert a right to keep his job while at the same time he inveighs against his superiors in public with intemperate and defamatory [cartoons] * * *. [Dismissal in such circumstances (416 U. S. 162) neither] * * * comes as an unfair surprise or is so unexpected * * * as to chill * * * freedom to engage in appropriate speech."

Although it is conduct, and not speech as such, emanating from the right of privacy which appellant asserts is here unconstitutionally regulated, the above principle applies with equal logic. It cannot be persuasively argued that the conduct of patrol officers off duty cannot affect the efficiency of the highway patrol as an effective police organization. It is difficult to perceive how the appellant, or any other officer, would not know that his conduct violated not only the spirit but the letter of the regulations and the statute.

We agree with appellant's argument that the conduct sought to be regulated must relate to his employment. That nexus is apparent here where the officer was known at the restaurant and bar to be a highway patrolman by the waitress and by inference, at least, with the other women with whom he associated. In sum and substance, appellant here is necessarily claiming, *irrespective of his employment as a patrol officer,* that he had a constitutionally protected right to engage in the conduct disclosed in the record. We disagree.

We are not persuaded that the reasons for removal were so unrelated and unsupported in fact to his standing and efficiency as a patrol officer and his connection with such patrol organization that they constituted impermissible reasons for termination. Hence, the first assignment of error is overruled.

The second assignment of error asserts that the equal protection provision of the Fourteenth Amendment was violated in appellant's removal in that at least one other officer, engaged in similar conduct on the night in question, received a lesser penalty. Appellant urges, in substance, that the issue is not one of abuse of discretion but constitutional infringement. We are unable to perceive how the discretionary authority as to the penalty, granted by statute to the appointing authority and upon appeal to the Board of Personnel Review under R. C. 124.34, can be isolated and removed from consideration in passing upon appellant's claim of error.

Admittedly, a statute, constitutionally valid and fair on its face, may be so applied by the state with such an uneven hand that a constitutional deprivation occurs. The appointing authority apparently did conclude, and there was a reasonable factual basis for such conclusion, that the conduct and involvement of appellant differed in kind and degree requiring removal in his case and lesser penalties in others. We hold that appellant has not sustained his burden of showing an invidious discrimination giving rise to a constitutional violation. It is significant to us that no authority is cited that identity of penalty is necessary under facts similar to those in this record.

The second assignment of error is overruled.

The third assignment of error is directed at the admissibility of written statements characterized by appellant as confessions, given by the appellant to an investigating patrol official. The claimed inadmissibility is predicated upon three grounds: (1) the failure to establish independently, by evidence, the corpus delicti as a prerequisite to admission of the statements; (2) a failure by the investigating officer to advise appellant of his constitutional rights; and (3) the admissions were coerced. We hold the statements were properly admitted. The corpus delicti rule has no application in civil cases and is a rule peculiar to criminal law. It originated, historically, in homicide cases where, prior to its adoption, the supposed victim occasionally appeared alive, surviving the accused murder. See *State* v. *Maranda* (1916), 94 Ohio St. 364, 370. Thus, there is no general rule

400

that has ever evolved requiring corroboration of admissions in civil cases, except in limited instances inapplicable here. 7 *Wigmore on Evidence,* Section 2075; *State* v. *Anderson* (1953), 254 S. W. 2d 609.

With respect to the claim that appellant should have been informed of his constitutional rights before being asked to make the statements, and bearing in mind this is a civil and not a criminal proceeding, we would observe that the Fifth Amendment reads: "nor shall be compelled in any *criminal* case to be a witness against himself. (Emphasis added.) The Sixth Amendment reads: "In all *criminal* prosecutions, the accused shall enjoy the right * * * to have the assistance of counsel for his defense." (Emphasis added.)

With respect to the claim that *Miranda* v. *Arizona* (1966), 384 U. S. 436, required the requisite warnings, we note it too is a rule with respect to criminal proceedings and one which, even then, the Ohio Supreme Court has restricted to criminal felony cases. *State* v. *Pyle* (1969), 19 Ohio St. 2d 64. *Garrity* v. *New Jersey* (1967), 385 U. S. 493, upon which appellant relies, is inapplicable and we distinguish it upon the same reasoning adopted by the Supreme Court of Colorado in *Jones* v. *Civil Service Comm.* (1971), 176 Colo. 25, 489 P. 2d 320. See also *Gerace* v. *County of Los Angeles* (1972), 100 Cal. Rptr. 917. What should be the rule in a criminal prosecution if it had followed the statements, under these circumstances, is not an issue before us for decision.

Finally we reject as unsupportable, either factually or legally, the claim of inadmissibility based upon duress. See 4 *Wigmore on Evidence,* Section 1050. See also annotation "Admissibility, In Civil Action, Of Confessions Or Admissions Which Could Not Be Used Against Party In Criminal Prosecution Because Obtained By Improper Police Methods," 43 A. L. R. 3d 1375.

For the above reasons, the errors assigned and argued are overruled and the judgment is affirmed.

*Judgment affirmed.*

GRAY, P. J., and ABELE, J., concur.