[No. 23706-7-II.    Division Two.    November 19, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. M.R.C., *Appellant*.

*Pattie Mhoon*, for appellant (appointed counsel for appeal).

*Christine O. Gregoire, Attorney General*, and *Rohana Fines, Assistant*, for respondent.

BRIDGEWATER, C.J. — M.R.C. appeals his detention for involuntary psychological treatment under RCW 71.05. We hold that the corpus delicti rule does not apply in involuntary treatment hearings; thus, the State could use his uncorroborated confession as evidence that he committed acts constituting a felony. We affirm.

On July 10, 1998, the Clallam County Superior Court dismissed without prejudice the charge of child molestation in the first degree against M.R.C. The court found that he was incompetent to stand trial and that he should be

transferred to Western State Hospital pending a civil commitment hearing.

A petition seeking M.R.C.'s commitment for 180 days of involuntary treatment was subsequently filed in the Pierce County Superior Court on July 29, 1998, alleging two separate grounds for his detention: (1) that he was gravely disabled due to a mental disorder; and (2) that as a result of the mental disorder, he had committed acts constituting a felony and was likely to repeat these acts.

M.R.C. waived his right to a jury trial and a hearing was held before Commissioner Ronald Thompson on August 6, 1998. At the hearing, Officer Gerald Swayze testified that M.R.C. told him he had kissed an 11-year-old child, touched the child's penis, and rubbed his bottom on the child's penis. Ronald Murray Hart, Ph.D., opined that M.R.C. is gravely disabled due to his mental retardation and that without supervision he presented a substantial likelihood of repeating his acts of molestation. M.R.C. objected to the testimony about his statement to Swayze, arguing that the corpus delicti rule applied and that the State had not provided corroboration of his statement. M.R.C.'s motion to exclude the testimony was denied. M.R.C. did not present any witnesses. The trial court held that the State had shown that M.R.C. was gravely disabled and that he had committed acts constituting a felony and was likely to repeat those acts. The trial court ordered M.R.C. committed to Western State Hospital for 180 days of involuntary treatment commencing August 6, 1998.

## I. MOOTNESS

M.R.C. concedes that because his detention has long since expired, we cannot grant the relief he requests (reversal of the commitment order and dismissal of the petition) and, therefore, this case is technically moot. But an appellate court may decide a moot case if it involves matters of continuing and substantial public interest. *In re Detention of Swanson*, 115 Wn.2d 21, 24-25, 793 P.2d 962, 804 P.2d 1 (1990). Both parties request review. In determin-

ing whether a sufficient public interest is involved, we consider the following criteria:

> (1) the public or private nature of the question presented; (2) the desirability of an authoritative determination which will provide future guidance to public officers; and (3) the likelihood that the question will recur.

*Dunner v. McLaughlin*, 100 Wn.2d 832, 838, 676 P.2d 444 (1984).

The question addressed here, whether the corpus delicti rule applies to civil commitment proceedings, is an issue of first impression in this state; it is also a public issue and has the potential for recurrence. Our Supreme Court has recognized that " 'the need to clarify the statutory scheme governing civil commitment is a matter of continuing and substantial public interest.' " *In re Detention of LaBelle*, 107 Wn.2d 196, 200, 728 P.2d 138 (1986) (quoting *McLaughlin*, 100 Wn.2d at 838). Also, the fact that both parties are requesting review indicates that there is need for guidance in the area and that the issues are likely to recur. *See Swanson*, 115 Wn.2d at 25. Therefore, although the case is technically moot, we will nonetheless address the issues M.R.C. raised.

## II. CORPUS DELICTI

■ ■ M.R.C. contends that his statement to police was improperly admitted into evidence in his civil commitment proceeding because the State did not establish the corpus delicti of his crime. The corpus delicti rule requires that the corpus delicti, literally the "body of the crime," be established before the admissions of a defendant may be considered in deciding whether the defendant committed the crime. *State v. Aten*, 130 Wn.2d 640, 655-56, 927 P.2d 210 (1996). An involuntary commitment hearing under RCW 71.05 is a civil proceeding. Mental Proceeding Rule

3.4(a); *see also McLaughlin*, 100 Wn.2d at 844-45.[1] The question is therefore whether the corpus delicti rule applies to civil cases.

Although this is an issue of first impression in our state, other states have held that the corpus delicti rule has no application in civil cases and is a rule peculiar to criminal law. *See, e.g.*, 7 JOHN HENRY WIGMORE, EVIDENCE § 2075 (James H. Chadbourn ed., 1978); *Corrigan v. Zolin*, 47 Cal. App. 4th 230, 54 Cal. Rptr. 2d 634 (1996) (driver's license revocation proceeding); *People v. Woznick*, 278 Ill. App. 3d 826, 663 N.E.2d 1037, 215 Ill. Dec. 523 (1996) (probation revocation hearing); *Webb v. Director of Revenue*, 896 S.W.2d 517 (Mo. Ct. App. 1995) (driver's license revocation proceeding); *Department of Motor Vehicles & Pub. Safety v. McLeod*, 106 Nev. 852, 801 P.2d 1390 (1990) (driver's license revocation proceeding); *In re Chase*, 50 Ohio App. 2d 393, 364 N.E.2d 292 (1976) (trial on the dismissal of a state employee). No general rule has ever evolved requiring corroboration of admissions in civil cases, except in limited instances inapplicable here. 7 WIGMORE, §§ 2066, 2075.

But M.R.C. argues that because the State was required by the statute to prove that he committed acts constituting a felony,[2] the concerns behind the corpus delicti rule are implicated and it should apply. In *Aten*, 130 Wn.2d at 656-57, our Supreme Court discussed the history of the corpus delicti rule:

The rule arose from a judicial distrust of confessions, coupled with the view that a confession admitted at trial would proba-

---

[1] It is notable that the only time a corpus delicti provision has been addressed statutorily is in the list of enumerated rights making it applicable to confessions used in juvenile proceedings. *See* RCW 13.40.140(8).

[2] Under RCW 71.05.280(3), a person may be involuntarily confined for treatment if:

Such person has been determined to be incompetent and criminal charges have been dismissed pursuant to RCW 10.77.090(4), and has committed acts constituting a felony, and as a result of a mental disorder, presents a substantial likelihood of repeating similar acts. In any proceeding pursuant to this subsection it shall not be necessary to show intent, willfulness, or state of mind as an element of the crime[.]

bly be accepted uncritically by a jury, thus making it extremely difficult for a defendant to challenge.[73] "This distrust stems from the possibility that the confession may have been misreported or misconstrued, elicited by force or coercion, based upon mistaken perception of the facts or law, or falsely given by a mentally disturbed individual."[74] The corpus delicti rule protects defendants from unjust convictions based upon confessions alone which may be of questionable reliability.[75]

---

[73]Note, *Proof of the Corpus Delicti Aliunde the Defendant's Confession*, 103 U. PA. L. REV. 638, 642-43 (1955). *See* [*City of Bremerton v.*] *Corbett*, 106 Wn.2d [569,] 576[, 723 P.2d 1135 (1986)].

[74]*Corbett*, 106 Wn.2d at 576-77 (citations omitted).

[75]*Id.* at 576 (citations omitted).

Although here the State has to prove by clear and convincing evidence that M.R.C. committed acts constituting a felony, the consequences of this hearing for M.R.C. are not equivalent to a criminal conviction; no jail time was imposed and no conviction was placed on his record. It was not a criminal proceeding.

Furthermore, an involuntary commitment hearing is not analogous to a criminal proceeding. There are several differences between involuntary commitment hearings and criminal trials, including: (1) the verdicts need not be unanimous, *McLaughlin*, 100 Wn.2d at 845; (2) the standard of proof is by clear, cogent, and convincing evidence, rather than by a reasonable doubt, *LaBelle*, 107 Wn.2d at 209; (3) it is not necessary to show intent, willfulness, or state of mind, RCW 71.05.280(3); (4) proceedings are brought by mental health professionals, not prosecutors, RCW 71.05-.150; and (5) the purpose of commitment is treatment, not punishment.

■ Thus, without a common law basis for the application of the corpus delicti rule to civil proceedings, we would have to find that the Legislature intended to apply the corpus delicti rule to involuntary commitment actions. Although the rights of a person subject to an involuntary commitment hearing are clearly set out by the Legislature, e.g., the right to be present, to proceed under the rules of

evidence, to present evidence, to cross-examine witnesses, to remain silent, etc., RCW 71.05.250, and .310, there is no language requiring the application of the corpus delicti rule, as there is with respect to juvenile proceedings. " 'Where a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature under the maxim expressio unius est exclusio alterius—specific inclusions exclude implication.' " *State v. Kazeck*, 90 Wn. App. 830, 833, 953 P.2d 832 (1998) (quoting *Washington Natural Gas Co. v. Public Util. Dist. No. 1*, 77 Wn.2d 94, 98, 459 P.2d 633 (1969)). We conclude that the Legislature did not intend to include this provision. Thus, like all other civil proceedings, the corpus delicti doctrine does not apply in involuntary commitment proceedings.

### III. THE DEFENDANT'S STATEMENT

■ M.R.C. also challenges the admission of his statement to police because he argues that his waiver of his right to remain silent was not knowing and voluntary. This argument is meritless. The involuntary commitment act provides that the detainee in an involuntary commitment proceeding has the right to remain silent at the probable cause hearing. RCW 71.05.250. M.R.C. exercised that right. The statute does not apply to out-of-court statements.

■ M.R.C. has also raised the claim that he did not knowingly and voluntarily waive his constitutional right to remain silent. Manifest constitutional errors may be raised for the first time on appeal.[3] RAP 2.5(a)(3); *State v. WWJ Corp.*, 138 Wn.2d 595, 980 P.2d 1257 (1999). An appellant must show actual prejudice in order to establish that the error is "manifest." *State v. Lynn*, 67 Wn. App. 339, 346, 835 P.2d 251 (1992). "Where the alleged constitutional error arises from trial counsel's failure to move to suppress,

---

[3]Although the State argues that M.R.C. may not raise a constitutional error for the first time on appeal in civil cases, this rule was superceded by RAP 2.5(a)(3). *State v. WWJ Corp.*, 138 Wn.2d 595, 980 P.2d 1257 (1999).

the defendant 'must show the trial court likely would have granted the motion if made. It is not enough that the Defendant allege prejudice[;] actual prejudice must appear in the record.' " *State v. Contreras*, 92 Wn. App. 307, 312, 966 P.2d 915 (1998) (quoting *State v. McFarland*, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995)). "[W]hen an adequate record exists, the appellate court may carry out its long-standing duty to assure constitutionally adequate trials by engaging in review of manifest constitutional errors raised for the first time on appeal." *Contreras*, 92 Wn. App. at 313. In this case, the record is not adequate for review of M.R.C.'s claim because it does not contain any information regarding the circumstances of M.R.C.'s waiver. Therefore, the issue cannot be addressed.

IV. SUBSTANTIAL EVIDENCE

M.R.C. also contends that the State did not prove that he was "gravely disabled" or that he "committed acts constituting a felony." *See* RCW 71.05.280. These grounds are in the alternative, and the State filed the petition for M.R.C. on both grounds. The trial court found that both grounds were proved. RCW 71.05.020(9) defines "gravely disabled":

> "Gravely disabled" means a condition in which a person, as a result of a mental disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety[.]

M.R.C. did not put on any witnesses at trial and the State's primary witnesses testified that he was gravely disabled and that he had sexual contact with a minor. M.R.C.'s statement was properly admitted; there is substantial evidence for the trial court's findings, and its findings support its conclusions both as to "gravely disabled" and that he had committed acts that constituted a felony.

Affirmed.

ARMSTRONG and HUNT, JJ., concur.

Review denied at 140 Wn.2d 1029 (2000).