19 P.3d 1062 (2001)
104 Wash.App. 953
In re the DETENTION OF V.B., Appellant.
No. 25603-7-II.
Court of Appeals of Washington, Division 2.
February 15, 2001.
*1063 Pattie Mhoon, Tacoma, for Appellant (Court Appointed).
Carolyn L.p. Howser Williamson, Pierce County Deputy Pros. Atty., Tacoma, for Respondent.
SEINFELD, J.
The parties ask us to decide whether either procedural due process or the civil commitment statutes require the State to prove at the 14-day commitment hearing that the officer who initially detained V.B. had reasonable cause to believe that she was mentally ill and presented either an imminent likelihood of serious harm or was gravely disabled at the time of the initial detention. We conclude that the law does not require this proof and, consequently, affirm.

FACTS
At 9:30 p.m. on January 17, 2000, Vancouver Police Officer Sharma delivered V.B. to the Southwest Washington Medical Center for a mental health evaluation. The officer had taken V.B. into custody in response to a 911 call from her landlord. V.B. had allegedly threatened other tenants in her building with a knife.
Barbara Darnall, a County Designated Mental Health Professional (CDMHP), began her evaluation of V.B. at 11:54 p.m., less than three hours after V.B. arrived at the hospital. After reviewing the police report, speaking with the two doctors and the registered nurse who had initially seen V.B., and interviewing and observing V.B., Darnall concluded that as a result of a mental disorder, V.B. presented an imminent likelihood of serious harm to others and was gravely disabled.[1] Darnall then completed a petition for initial detention and an authorization and notice of detention providing for V.B.'s 72 *1064 hour evaluation and treatment at Western State Hospital. V.B. was detained at Western State Hospital at 12:45 a.m., January 18, 2000.
On January 19, Examining Physician Glenn Morrison, D.O. and Examining Mental Health Professional David S. Olegar, Ph.D., evaluated V.B. at Western State. They diagnosed V.B. as suffering from chronic paranoid schizophrenia and concluded that she should be held for 14 day involuntary treatment because, as a result of her mental illness, she presented a likelihood of serious harm to others and was gravely disabled. Doctors Morrison and Olegar filed a petition for 14 day involuntary treatment and an affidavit in support of the petition requesting a probable cause hearing.
The court heard the petition the following day. V.B.'s counsel objected because the State did not plan to call the officer who had originally detained V.B. The State explained that it had been unable to locate the officer and intended to proceed solely on the basis of grave disability, apparently because it needed evidence of the officer's observations as proof that V.B. presented a likelihood of serious harm to others.
The State called Darnall and Olegar. Darnall testified about her initial contact with V.B. and described the symptoms she had observed. V.B.'s counsel elicited the only testimony that related to information the officer had obtained. This occurred during counsel's cross-examination of Darnall:
Q [Counsel for Respondent] You indicated in your investigation that you attempted contact with Jim, an apartment manger.
A [Darnall] Yes.
Q And that would be [V.B.'s] apartment manager?
A To the best of my knowledge.
Q Okay. So you were aware she has her own apartment?
A According to the police officer, yes.
Report of Proceedings (RP) at 9-10.
Olegar testified that he evaluated V.B.'s records, observed her behavior, spoke with treatment staff, and personally interviewed V.B. He noted that although V.B. had not caused problems for the staff, she was guarded, irritable, suspicious, disoriented, disorganized, resistant, and periodically confused. He also testified that V.B. "denied repeatedly and categorically that she [had] a mental illness," and he stated that she would never take medication. RP at 15-16.
In regard to her physical health, Olegar testified that V.B. was not taking medication for her severe psoriasis and that she denied being a diabetic despite a blood sugar level over 200. V.B. also told Olegar that she did not sleep and did not need to. Both Darnall and Olegar concluded that V.B. was mentally ill and gravely disabled and that she should be held for additional evaluation and treatment.
After the State rested, V.B.'s counsel stated that V.B. did not wish to testify and moved to dismiss. Counsel argued that without the officer's testimony, the State had not shown that the officer had reasonable cause to initially detain V.B., as RCW 71.05.150(4)(b) requires, and that it had failed to produce sufficient evidence to show that V.B. was mentally ill and gravely disabled.
The State acknowledged that RCW 71.05.150(4)(b) requires that the detaining officer have reasonable cause to believe that the detainee is mentally ill and dangerous or gravely disabled at the time of the initial detention. It contended, however, that the law does not require the State to prove compliance with RCW 71.05.150(4)(b) at the 14 day probable cause hearing.
The court denied V.B.'s motion to dismiss, stating:
The Court: Well, this is an issue that I wish at some point we could get some resolution on so we're not here faced with this each time. I think all of us may have a different idea of what we need to do. And certainly, I think it's incumbent on all of us to make sure that we afford the individual all the due process rights that seem to be available to them.
I am satisfied, quite frankly, that we have followed that, and that is that the person is taken to a hospital and the person has to be seen within a very limited period of time by a mental-health professional. Then there's the other safeguards *1065 that occur along the way, such as being seen by the physician or a doctor of some sort, and, secondly, the matter is in court within 72 hours.
And I think the fact that we proceed so quickly on that does create issues where sometimes it's difficult to get ahold of a police officer. I think the better practice, of course, is that the police officer should be called to be part of the case. I'm not prepared to dismiss this case based on that.
RP at 24-25
The court found V.B. gravely disabled due to her mental illness and committed her to 14 day involuntary treatment at Western State Hospital. V.B. appealed.

I. MOOTNESS
Because V.B.'s 14-day commitment has long since expired, this court cannot fashion a remedy that will directly affect V.B; thus, this case is moot. See In re Detention of Swanson, 115 Wash.2d 21, 24, 793 P.2d 962 (1990); In re Detention of Cross, 99 Wash.2d 373, 376-77, 662 P.2d 828 (1983). But both parties and the trial court have asked for a decision regarding the State's burden to prove that the detaining officer had reasonable cause to take V.B. into custody.
An appellate court may decide a matter that is moot if it is a matter of continuing and substantial public interest. Swanson, 115 Wash.2d at 24, 793 P.2d 962; Dunner v. McLaughlin, 100 Wash.2d 832, 838, 676 P.2d 444 (1984); Cross, 99 Wash.2d at 377, 662 P.2d 828; State v. M.R.C., 98 Wash.App. 52, 54-55, 989 P.2d 93 (1999). In deciding whether to review a moot matter, we consider: (1) the public or private nature of the question; (2) the desirability of an authoritative determination that will provide future guidance to public officers; and (3) the likelihood the question will recur. Swanson, 115 Wash.2d at 24-25, 793 P.2d 962; Dunner, 100 Wash.2d at 838, 676 P.2d 444; Cross, 99 Wash.2d at 377, 662 P.2d 828; M.R.C., 98 Wash.App. at 55, 989 P.2d 93.
Here, clarification of the civil commitment statutes is an issue of continuing and substantial public interest. In re Detention of G.V., 124 Wash.2d 288, 294-95, 877 P.2d 680 (1994); In re Detention of R.S., 124 Wash.2d 766, 770, 881 P.2d 972 (1994); Swanson, 115 Wash.2d at 25, 793 P.2d 962; Dunner, 100 Wash.2d at 838, 676 P.2d 444; Cross, 99 Wash.2d at 377, 662 P.2d 828; M.R.C., 98 Wash.App. at 55, 989 P.2d 93. The fact that both parties and the trial court have requested review indicates the need for guidance in this area and the likelihood that the issue will reoccur. See Swanson, 115 Wash.2d at 25, 793 P.2d 962; M.R.C., 98 Wash.App. at 55, 989 P.2d 93. This likelihood of recurrence is particularly great because of the less than 72-hour period in which the court must conduct the 14-day probable cause hearing, making it more difficult to obtain the detaining officer's presence.
Further, many significant civil commitment issues reach the appellate court only after they are technically moot. See G.V., 124 Wash.2d at 294-95, 877 P.2d 680; Dunner, 100 Wash.2d at 837-38, 676 P.2d 444; Cross, 99 Wash.2d at 377, 662 P.2d 828. Consequently, we conclude that whether either chapter 71.05 RCW or due process requires the State to establish at the 14-day probable cause hearing that the detaining officer had reasonable cause to initially detain the respondent is a matter of continuing and substantial public interest. Thus, we will resolve this question on the merits.[2]

II. STATUTORY REQUIREMENTS
The question here is whether chapter 71.05 RCW requires the State to establish at the 14-day probable cause hearing that the detaining officer had reasonable cause to believe the detainee was mentally ill and dangerous or gravely disabled.
Although we must strictly construe statutes that impact on liberty interests, in the civil commitment context we also consider the intent of the statute. See Swanson, *1066 115 Wash.2d at 31, 793 P.2d 962. Because the purpose of civil commitment is not punitive, but is instead to benefit the detainee as well as to protect the public, strict construction of the statutory scheme may not be appropriate in all cases. See Swanson, 115 Wash.2d at 31, 793 P.2d 962.
The civil commitment statute, chapter 71.05 RCW, contains numerous safeguards against the improper deprivation of liberty. The Legislature adopted these procedures:
(1) To prevent inappropriate, indefinite commitment of mentally disordered persons and to eliminate legal disabilities that arise from such commitment;
(2) To provide prompt evaluation and timely and appropriate treatment of persons with serious mental disorders;
(3) To safeguard individual rights;
(4) To provide continuity of care for persons with serious mental disorders;
(5) To encourage the full use of all existing agencies, professional personnel, and public funds to prevent duplication of services and unnecessary expenditures;
(6) To encourage, whenever appropriate, that services be provided within the community; and
(7) To protect the public safety.
RCW 71.05.010.
If a peace officer has reasonable cause to believe that a person is suffering from a mental disorder and that person either presents an imminent likelihood of serious harm or is in imminent danger because of being gravely disabled, the officer may take that person into custody. RCW 71.05.150(4)(b). The officer then must immediately deliver the detainee to an evaluation and treatment facility or the emergency department of a local hospital. RCW 71.05.150(4). The facility may hold the detainee for up to 12 hours, but only if a mental health professional examines the detainee within three hours of arrival. RCW 71.05.150(5).
To authorize further detention, the CDMHP must evaluate within 12 hours the alleged facts and assess the reliability and credibility of the officer and others providing information. RCW 71.05.150(2), (5).[3] If the CDMHP determines that the detainee is mentally ill and dangerous or gravely disabled, the CDMHP may place the detainee in emergency custody in an evaluation and treatment facility for not more than 72 hours. RCW 71.05.150(2); RCW 71.05.180. To do so, the CDMHP must file a petition for detention and serve a copy on the detainee and his or her designated attorney. RCW 71.05.150(5), RCW 71.05.200(2).
Within 24 hours of the detainee's provisional acceptance at the facility, a licensed physician and a mental health professional must evaluate the detainee's condition. RCW 71.05.210; Swanson, 115 Wash.2d at 33, 793 P.2d 962. Upon determining that the detainee is mentally ill and dangerous or gravely disabled, the facility may detain the person for up to 72 hours. RCW 71.05.180; RCW 71.05.210.
To hold the detainee for up to an additional 14 days beyond the 72 hour period, the facility must petition the court and there must be a probable cause hearing. RCW 71.05.200(1)(a). Either two physicians or one physician and a mental health professional who have examined the detainee must sign the petition for additional involuntary treatment. They must state facts that support *1067 the finding that the detainee either presents a likelihood of serious harm or is gravely disabled due to a mental disorder and that there are no less restrictive alternatives available. RCW 71.05.230(4). The evaluating party must be willing to testify that these conditions exist. RCW 71.05.230(1).
Absent approval of a postponement or continuance, the probable cause hearing must be held within 72 hours of the detainee's provisional acceptance at the treatment facility. MPR 2.2(c); RCW 71.05.170; RCW 71.05.180; RCW 71.05.240; Swanson, 115 Wash.2d at 33, 793 P.2d 962. Otherwise, the facility must release the detainee. RCW 71.05.200(1).
At the 14-day probable cause hearing, the detaining facility must establish by a preponderance of the evidence that the detainee's condition is caused by a mental disorder and that the detainee either presents a likelihood of severe harm or is gravely disabled. RCW 71.05.240. The detainee has the right to (1) communicate immediately with an attorney, (2) have an appointed attorney if indigent, (3) present evidence, (4) cross-examine witnesses, (5) demand application of the rules of evidence, (6) remain silent, and (7) view and copy all petitions and reports in the court file. RCW 71.05.200; RCW 71.05.250.
Chapter 71.05 RCW contains no requirement that there be either testimony from the detaining officer or evidence about the officer's reasonable cause to detain. The only person who, according to the statute, must testify is the evaluating party who determined the necessity of continued involuntary treatment. RCW 71.05.230(1).[4] Requiring the testimony of the evaluating party is consistent with the focus of the 14-day hearing: whether the detainee is presently in need of treatment and thus needs to remain in detention.
The State has the burden of production as well as the burden of persuasion on this issue. See In re Detention of LaBelle, 107 Wash.2d 196, 222, 728 P.2d 138 (1986) (holding that the probable cause hearing is designed to protect a detainee's liberty interest by assuring adequate grounds to detain the individual beyond the initial 72-hour period). To meet this burden, the State may choose to call a detaining officer who has relevant information about whether the detainee needs further detention. For example, the officer's description of the detainee's violent conduct may shed insight on the detainee's potential for violence. But chapter 71.05 RCW does not require testimony from a detaining officer, and if the officer cannot provide admissible evidence about the detainee's need for continued treatment, his or her testimony may be of no value.

III. DUE PROCESS
Clearly, involuntary commitment actions involve important liberty interests and due process protections apply to a detainee. Dunner, 100 Wash.2d at 838-39, 676 P.2d 444. To determine the adequacy of the procedural due process provided, we examine three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of such interest through the use of the existing procedures and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirement would entail. Dunner, 100 Wash.2d at 839, 676 P.2d 444 (citing Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).
Here, the private interest at stake is significant, the detainee's liberty. But the numerous procedural safeguards minimize the risk of an erroneous deprivation of this liberty.
*1068 The series of evaluations and hearings that chapter 71.05 RCW mandates guards against holding a detainee who is not mentally ill and dangerous or gravely disabled at the time of the decision to continue detention.[5]
A facility may not hold a detainee for more than three hours merely on the word of the detaining police officer. At that point, a mental health professional must perform an additional evaluation. RCW 71.05.150(5). And to hold the detainee for more than 12 hours, the CDMHP must evaluate the alleged facts and the detaining officer's reliability and credibility. Independent observations by the facility's evaluators must support any detention beyond 72 hours. RCW 71.05.150(2); RCW 71.05.230(1). Finally, there are other civil and criminal remedies if the police fail to act in good faith or act with gross negligence. See RCW 71.05.120(1).
The State's interest is in protecting the public and in caring for those in need of mental health treatment. It would waste officer time and financial resources to require the testimony of an officer who has no relevant or non-cumulative information to provide. And releasing a detainee who meets the criteria for detention merely because of officer unavailability puts the public and the detainee at an unnecessary risk. See LaBelle, 107 Wash.2d at 222, 728 P.2d 138 (in the context of involuntary civil commitment, the court should consider the risk of erroneous release).
Balancing all these factors, we conclude that although the protection of the detainee's liberty interest is important, the procedures in the involuntary civil commitment statutes provide adequate protection against erroneous detention. The significant State interest in protecting the public and caring for those in need of treatment clearly outweighs any minimal enhancement to due process protections that might be gained by requiring the detaining officer's testimony as to his or her reasonable cause to detain.
Thus, we affirm.
We concur: MORGAN, J., and HUNT, A.C.J.
NOTES
[1] A gravely disabled person is a person who, as the result of a mental disorder: "(a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety[.]" RCW 71.05.020(14) (formerly (9)).
[2] V.B. also contends that the State failed in this case to prove the statutory factors of RCW 71.05.200(1)(a). Because the detention period has expired, we cannot provide relief on this question and thus decline to address it.
[3] RCW 71.05.150(2) states:

When a county designated mental health professional receives information alleging that a person, as the result of a mental disorder, presents an imminent likelihood of serious harm, or is in imminent danger because of being gravely disabled, after investigation and evaluation of the specific facts alleged and of the reliability and credibility of the person or persons providing the information if any, the county designated mental health professional may take such person, or cause by oral or written order such person to be taken into emergency custody in an evaluation and treatment facility for not more than seventy-two hours as described in RCW 71.05.180.
RCW 71.05.150(5) states:
Persons delivered to evaluation and treatment facilities by peace officers pursuant to subsection (4)(b) of this section may be held by the facility for a period of up to twelve hours: PROVIDED, That they are examined by a mental health professional within three hours of their arrival. Within twelve hours of their arrival, the county designated mental health professional must file a supplemental petition for detention, and commence service on the designated attorney for the detained person.
[4] RCW 71.05.230 reads in part:

A person detained for seventy-two hour evaluation and treatment may be detained for not more than fourteen additional days of involuntary intensive treatment or ninety additional days of a less restrictive alternative to involuntary intensive treatment if the following conditions are met:
(1) The professional staff of the agency or facility providing evaluation services has analyzed the person's condition and finds that the condition is caused by mental disorder and either results in a likelihood of serious harm, or results in the detained person being gravely disabled and are prepared to testify those conditions are met[.]
[5] V.B. appears to argue that the State had to prove she was dangerous in order to keep detain her the additional 14 days. This is incorrect. The State did not pursue the dangerousness allegations. A finding that V.B. was mentally ill and gravely disabled alone was sufficient to extend her detention.